JULIUS M. MCLEOD ET AL., APPELLANTS, V. LINCOLN MEDI-CAL COLLEGE OF COTNER UNIVERSITY ET AL., APPELLEES.

FILED JULY 3, 1903.    No. 12,913.

1. Corporation: CHARACTER AND PURPOSE OF ORGANIZATION. The character of a corporation is determined from its articles of incorporation and the statute authorizing its formation.

2. ———: ———. The fact that an educational institution may acquire and convey property necessary to the accomplishment of its object, and may charge tuition for instruction, does not render it an incorporation for the pecuniary benefit of its members.

3. Evidence. Evidence examined, and held sufficient to sustain the judgment of the trial court.

APPEAL from the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. Affirmed.

Carrol S. Rainbolt, Orpheus B. Polk, Robert S. Mockett, T. L. Norval, Richard S. Norval and B. F. Norval, for appellants.

Addison Tibbets, Robert Ryan, George W. Tibbets and W. L. Anderson, contra.

OLDHAM, C.

The Lincoln Medical College of Cotner University was organized and incorporated in 1896, under the provisions of section 15, chapter 16, Compiled Statutes (Annotated Statutes, 4168). The object of the corporation, set forth in its articles, was to "carry on the Medical Department of Cotner University in the city of Lincoln, Lancaster county, Nebraska; and to establish schools of dentistry and pharmacy in connection therewith." The organization had a theoretical capital stock of $50,000, of which $5,000 was treated as having been fully paid at the time of the incorporation of the school. It appears, however, from the testimony contained in the bill of exceptions, that the school was incorporated by a number of physicians, who were allied with the school of medicine known as the eclectic school; that as a matter of fact, no part of the capital stock was actually paid up at the time the articles of incorporation were filed, but that each of the incorporators and stockholders of the institution undertook and agreed to lecture and give instruction to the students of the school at the rate of $6 per hour, $1 of which was to be paid in cash and $5 in stock. The dollar that was to be paid in cash was procured by delivering scholarships of the value of $125 to each instructor when he had earned that amount, and permitting him to sell the same to the students; consequently, under this arrangement the amount of the capital stock owned by each of the faculty of the institution stood for so many hours' service as lecturer and instructor in the institution at the rate of $5 per hour. The affairs of the institution were conducted in this manner until 1901, at which time three of the instructors and stockholders of the institution seem to have apostatized from some doctrinal points of the faith taught by the eclectic school of medicine, and to have become impregnated with certain heretical theories taught by the allopathic or regular school. This caused trouble and dissension in the faculty, and, as the result, two or three of the professors were

dropped from the roll of instructors. The dissension increased after this until August, 1901, when, by a three-fourths vote of the board of directors of the incorporation, it was dissolved.

In the meantime, the Lincoln Medical College, a new corporation, was formed under the same provisions of the statute and for the same purpose as that of the original corporation. This corporation was composed of all the members and officers of the original corporation, except the three dissenters; when the original association was dissolved, a committee was appointed by the board of directors to appraise and value the tangible assets and good will of the defunct corporation. This they did, and valued the tangible assets at about $1,400 and the good will at $500, and, by a unanimous vote of the board of directors, transferred these assets to the new corporation, which also assumed and agreed to give instruction to the students owning scholarships purchased from the old institution. The new corporation entered into a contract with Cotner University to continue its course of instruction as an adjunct to that institution, and opened its school at the usual time in the year 1901. Thereafter the plaintiffs, two of the stockholders of the original corporation, instituted this action against the new corporation and its officers and stockholders, alleging that the transfer of the assets and good will of the original corporation were fraudulently made by a majority of the officers and agents of such corporation to the new corporation, of which they themselves were the stockholders and persons beneficially interested, and that such transfer was made for an inadequate consideration, and for the fraudulent purpose of excluding these plaintiffs from participating in the affairs of the corporation, and for the purpose of destroying the value of the stock held by them. They asked that the sale from the original corporation to the new corporation be set aside; that a receiver be appointed to sell the tangible assets and good will of the original corporation, and that the new corporation be enjoined and restrained from proceeding to give instruc-

tion in Cotner University under the name of the Lincoln Medical College. Defendant, Reynolds, another minority stockholder of the original corporation, filed a cross-petition, alleging substantially the same matters set up in plaintiffs' petition, and joined in their prayer for relief. The defendant, the Lincoln Medical College, and the individual stockholders and faculty thereof, filed answers alleging that the transfer from the original corporation to the new corporation was made in good faith, for a valuable consideration, by a three-fourths vote of the board of directors of the original corporation; that such transfer was necessitated because of a conspiracy entered into by plaintiffs and cross-petitioner, Reynolds, for the purpose of defeating the object for which the original corporation was instituted. Twenty-one students of the institution, who had purchased scholarships from the original corporation, filed a cross-petition on their own behalf and on behalf of forty others similarly situated, alleging that they had purchased scholarships which entitled them to a four-years' course of instruction, while the plaintiffs and cross-petitioner, Reynolds, were stockholders of the original corporation, and that the new corporation was performing the conditions of the contract entered into by the old corporation with them, and giving them proper and orthodox instruction, and also alleging that it would work an irreparable injury upon them, if plaintiffs' petition were granted and the Lincoln Medical College was restrained from giving them further instruction. On issues thus joined, the trial court found the transfer from the old to the new corporation was made in perfect good faith and for an adequate consideration, and dismissed the petition of plaintiffs and of cross-petitioner, Reynolds, and from this order and judgment an appeal is taken to this court.

The character of a corporation is determined from its articles of incorporation and the statute authorizing its formation. In this case it is apparent from both the articles of incorporation and the provisions of section 15, chapter 16, Compiled Statutes, that this organization is

an educational and not a "business" or "trading corpo-
ration" for the pecuniary profit of its members.    While
incorporated educational institutions may be authorized
to hold all kinds of property acquired by purchase, do-
nation, devise or otherwise, and to convey the same at
their pleasure, they may only do this for the purpose of
accomplishing the legitimate ends of the corporation, and
the fact that such an institution may charge tuition for
instruction, does not change its nature and make it an
incorporation for pecuniary benefit.    1 Clark & Marshall,
Private Corporations, p. 84; *Santa Clara Female Academy
v. Sullivan*, 116 Ill. 375.    It would, therefore, follow that
the transfer of the assets from the old to the new corpora-
tion in the instant case, and also the change of the name
of the school, was not a departure in any sense from the
original intent and purpose of the old organization.    In
fact, the power to make such a change, when done in good
faith, is anticipated and authorized by section 172, chapter
16, Compiled Statutes (Annotated Statutes, 4188).

An examination of the testimony of the physicians and
instructors connected with each of the institutions, as well
as a comparison of the articles of incorporation of each,
show that the new is but a reincarnation of the old; the
only change being that extra precautions have been taken
in the by-laws of the new to protect its faculty from the
invasion of the schismatics and heretics to its established
medical faith.    No question is raised in this case as to the
right of plaintiffs to exchange their proportionate share
of stock in the original corporation for a like share of
capital stock of the new organization.    They have not
asked for the enforcement of this right, if it does exist.    It
is virtually conceded, that the tangible property of the old
institution was sold to the new for its actual cash value.
The only contention is that the good will of the old institu-
tion should have brought a greater price than $500.    With-
out determining whether or not the good will of a corpora-
tion of this character should be treated as a commercial
asset, it is sufficient to say that all the testimony showed

that the institution had been run at a loss to its incorporators and stockholders, with the exception of such benefit as they received from their association and investigation of scientific questions in connection with their students. Hence if the good will of this institution was treated as an asset, its commercial value would have to be indicated by a minus quantity.

From a careful examination of the entire record, we are fully satisfied with the judgment and findings of the learned trial court, and we therefore recommend that the judgment be affirmed.

HASTINGS and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed February 17, 1904. *Judgment of district court reversed:*

1. **Corporation: CONTRACT.** The directors of a corporation can not bind it by contract with another corporation of which they are also directors, and which they represent in making such contract.

2. **Powers of Majority Stockholders.** The majority stockholders of a corporation have no power to exclude the minority stockholders therefrom, by organizing a new corporation and transferring all the property and good will of the old to the new corporation, without the consent of the minority stockholders.

3. **Action: ILLEGAL TRANSFER.** The minority stockholders can maintain an action in their own names to set aside an illegal transfer of all property and good will of the corporation, when such transfer is made by the board of directors of the corporation pursuant to instructions of the majority of the stockholders.

SEDGWICK, J.

Upon reargument of this case, we are satisfied that the former opinion prepared by Mr. Commissioner OLDHAM is wrong. There can be no doubt that the Lincoln Medical College of Cotner University was formed for the personal profit and emolument of its stockholders, and was a busi-

ness corporation. The authorized capital stock was $50,000, and it was provided that a part of this should be paid for in cash, but the larger part was to be paid for in services of the subscribers to be rendered for the benefit of the corporation. About one-half of the authorized capital stock had been subscribed for and issued, and was held by individuals at the time of the organization of the new corporation. The principal business of the corporation was to conduct a medical college. The evidence shows that it was intended that the college should be conducted in connection with Cotner University. The plaintiffs and the intervener, Dr. Reynolds, were for several years stockholders and directors of the corporation and members of its medical faculty. During the first years of its operation, no questions seem to have been raised in regard to the different schools of medicine whose tenets were being more or less inculcated by the different members of the faculty, and when such questions arose in the faculty, there seems to have been a clash among its members; some favoring one particular school of medicine, but a large majority favoring another. The majority seem to have excluded the minority from the faculty, and no reason appears from the evidence for the fear, which seems to have arisen in the minds of the majority, as to their ability to control the school and to determine the character of the instruction to be given, as well as the personality of the faculty and the board of directors.

If we assume, as the defendants here strongly insist, that the plaintiffs and the intervener, Dr. Reynolds, had conspired together to control the policy of the school, and to cause the faculty, or at least a majority thereof, to be selected from the particular school of medicine to which they belong; and if we further assume that the plaintiffs and the intervener, Dr. Reynolds, were determined to either bring about such a change in the school or to destroy the school altogether, still the evidence fails to show that the defendants, who were a majority of the stockholders and of the directors, as well as the faculty, were not able to

control the corporation and its policies, and to protect the school from the machinations of its enemies by the usual legal and equitable remedies invoked in such cases. If they could not so protect themselves and the school, it would still manifestly be unlawful to use the means pursued by them.

"A person who is agent for two parties can not, in the absence of express authority from each, represent them both in a transaction in which they have contrary interests. * * * It follows, therefore, that the directors, or other agents of a corporation, have no implied authority to bind the company by making a contract with another corporation which they also represent." Morawetz, Private Corporations (2d ed.), sec. 528.

This principle of law has been announced by this court in *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463, 491, and *Miller v. Brown*, 1 Neb. (Unof.) 754. In the opinion in the latter case the following language is quoted from Cook, Stock and Stockholders (2d ed.), sec. 653:

"One of the most frequent frauds perpetrated upon a corporation and its stockholders is where one or more of the directors purchase property from the corporation directly or indirectly or participate in the profits of such a purchase. The law is well settled that a director's purchase of property from the corporation is voidable at the option of the corporation, even though the directors paid fully as much as or more than the property is worth. * * * The corporation may reclaim the property upon payment to the director of the amount he paid therefor." Indeed the citation of authority upon this proposition is unnecessary, since it is the universal rule of all the cases. The true meaning, as well as the just application of the rule, is well shown in 10 Cyc. 285, 286, and authorities cited in the notes.

The case of *O'Conner Mining & Mfg. Co. v. Coosa Furnace Co.*, 95 Ala. 614, 36 Am. St. Rep. 251, is construed by the defendants in their brief as authority for a

different rule; but it will not bear such construction. It is merely held in that case, as it is in nearly all other cases, that the transaction complained of was not absolutely void, but was voidable; and that creditors of the corporation, who were not prejudiced in the collection of their claims, by the transaction, could not attack the transaction as fraudulent as to them, but in order to do so, must furnish proof of the insolvency of the corporation at the time of the transaction, or that it was entered into with intent to hinder, delay or defraud creditors. The language of the syllabus is:

"Such dealings are not absolutely void, but are voidable at the election of the respective corporations, or the stockholders thereof, and they become binding if acquiesced in by the corporations and their stockholders."

In the case at bar the majority of the stockholders, for the manifest purpose of getting rid of the minority stock, organized a new corporation to which they gave substantially the same name as the old one, the original name being, "Lincoln Medical College of Cotner University." In the corporate name of the new corporation they omitted the words, "of Cotner University," but the corporation had commonly been known by the name of Lincoln Medical College and was so styled even upon the records of the corporation itself. The incorporators of the new corporation were not only stockholders of the old, but also constituted in the main its board of directors; and, at the meeting at which they organized the new corporation, they made arrangements to transfer all of the property, good will, and business of the old corporation to the new. From that time until the trial of this case in the court below, they appear to have conducted the business in the same manner that it had been conducted under the old corporation, there being no change except that the troublesome minority stockholders were not allowed to take stock in the new corporation, and the words, "of Cotner University," were dropped from the corporate name as before stated.

They appointed a committee to fix the value of the as-

sets, including the property and good will of the old corporation, and, acting as the board of directors for both corporations, they made a contract of sale of this property and good will from the old to the new corporation. Further statement of the facts in the case, as disclosed in the evidence, may be found in former opinion. It may be that they have accomplished no more by this transaction than could have been done under the old corporation and in its name, but that fact makes the more apparent the illegality of the transaction. It may be that they have acted in good faith, with the purpose to promote the best interests of the school they had in charge, and that their action has been a direct benefit, not only to the school and to the majority of the stockholders, but also to the minority of the stockholders themselves who are now complaining, but this question was not for the majority to determine in the way that it was determined. No man can be compelled to dispose of his stock in a corporation, or other property interests, because, in the judgment of the parties so compelling him, it is for his interest financially and otherwise so to do. The trial court under this evidence should have found that the attempted transfer of the property from one corporation to another was void as against the old corporation and the minority stockholders who are now complaining; and that these directors who are now styling themselves directors of the new corporation, and who were, at the time of the transaction complained of, the directors of the Lincoln Medical College of Cotner University, are still the directors of that corporation and are conducting the business as such.

The decree should have canceled the transfer of the property; and should have fixed the right of the Lincoln Medical College of Cotner University to said property and good will of the college; and should have protected that corporation in the exercise of its rights.

Twenty-one of the students of the Lincoln Medical College of Cotner University have intervened in this case, and have objected to the appointment of a receiver to take

charge of the property of the college as prayed for in the petitions of the plaintiffs and the intervener, Dr. Reynolds. Their objection to the appointment of such receiver is well taken. It does not appear that there are any rights or interests of the plaintiffs or intervener, Dr. Reynolds, that can not be amply protected by a court of equity without appointment of such receiver, whereas it does appear that the appointment of a receiver to manage the affairs of an educational institution might be detrimental to the students as well as the interests of the institution itself.

Changes may have intervened since the trial of the case in the court below, making it necessary to take further evidence in order to properly determine and protect the interests of the respective parties.

The decree of the district court will be reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.

HOLCOMB, C. J., dissenting.

While agreeing in the main with what is said in the majority opinion, when considered as abstract propositions of law, I can not but feel that there is a pronounced misapplication of the legal principles enunciated to the record and the facts therein disclosed in the case at bar. The corporations, both the old and the new, are educational in character, and are not moneyed or business corporations organized for pecuniary profit in the ordinary acceptation of the term. I think the most that can be said is that the articles of incorporation, and the business for which organized, contemplate that the management and conduct of corporate affairs shall be made self-sustaining as nearly as possible; and in that sense, and as an incident to its main purpose, it may be said to be a business corporation.

Its principal object and chief aim, however, manifestly is to conduct a medical school under the teachings and fostering care of those belonging to that branch of the medical profession commonly called Eclectics, afford facilities for such as desire to fit themselves to engage in

the practice of medicine, and thus enlarge the field of action and sphere of usefulness generally of this particular body of the disciples of Æsculapius.

The action is one in equity. Plaintiffs and the intervener, Reynolds, who are appellants in this court, were minority stockholders in the old corporation, and it is altogether clear to my mind that they had confederated together with a view of thwarting the majority in furthering the objects and purposes of the organization, and to prevent them from accomplishing the measure of success hoped for by those who were sincere friends and supporters of the undertaking.

As evidencing the spirit manifested toward the organization, I quote briefly from a letter found in the record written by one of appellants to a prospective student:

"The L. M. C. (Lincoln Medical College) is very shaky. Dr. —— and myself have employed three lawyers, and have applied to the court for a receiver to wind up its affairs, sell what there is, and pay its debts. The college owes about $1,500, with only a few microscopes and chairs as assets. So you see there won't be much left for the stockholders. The boys are scattering to different schools."

As a result of the internal troubles of the old corporation, the organization of the new was entered upon by those who were trying in good faith to make it a success. The alleged illegal sale and transfer of the assets and good will of the old corporation to the new is at most voidable at the instance of an injured party. The transaction is not absolutely void. The appellants have suffered nothing in a pecuniary way. If they have lost anything it is only in the infringement of a naked legal right. The sale and transfer of the assets of the old to the new corporation is an accomplished fact, and that corporation has been conducting its business for well onto three years. The appellants framed their petition and cross-petition in the lower court, and have conducted their case thereafter in the trial court and in this court, on the theory that the old corporation had outlived its day of usefulness; that it had

39

become incapable of accomplishing the purposes for which organized; that it was disorganized and disrupted, and could not again be placed on its feet as a living, going concern; that a receiver should be appointed to take charge of its affairs; the transfer of the property and assets from the old to the new canceled and annulled, and sold by order of the court; the debts paid, and the surplus, if any, distributed to the stockholders. This is the prayer of their petitions, and the allegations contained therein are with the view and for the special purpose of supporting their right to the relief thus demanded. The briefs in this court are pregnant with suggestions and assertions to the effect that their rights can be preserved and vindicated only by a cancelation of the contract of sale to the new corporation; a sale of the corporate assets of the old, and the winding up of its affairs through the appointment of a receiver. It is said in the majority opinion that no man can be compelled to dispose of his stock in a corporation or other property interests because, in the judgment of the parties so compelling him, it is for his interests financially or otherwise so to do. Strictly speaking, it does not seem to me that this is an accurate expression of a sound proposition of law. A majority of a corporation, of course, may ordinarily and in a proper case sell its property and wind up its affairs. They can not, however, sell to themselves, in the guise of a new corporation, in fraud of the rights of minority stockholders. It does not seem to me that either of these questions are properly in this case. The appellants want this property sold and the corporate affairs terminated. Their yearnings in this respect are so strong that it is urged that this must be done by selling under the hammer, on the auction block, at forced sale by a receiver under a decree of court. The only difference between them and the majority stockholders is as to the method by which the sale shall be accomplished. They are not content to have the property sold at voluntary sale for all that it is worth, but their love of the old corporation is so great that, to satisfy them, the property and good will

must be exposed at public vendue, and sold to the highest bidder for cash. I am quite well satisfied that the finding of the trial court, that the property and good will of the old corporation sold for all it was reasonably worth, is amply supported by the evidence. Having suffered no pecuniary loss, and coming into court in the attitude they have, I maintain, as was found by the trial court, that the appellants have no standing in a court of equity. Were these plaintiffs in court trying to preserve the old corporation, its property and assets and maintain its integrity; have its business conducted as contemplated by its articles of incorporation and in furtherance of the corporate aims and objects; and had by suitable allegations shown themselves in good faith to be endeavoring to protect their own rights and those of the corporation, they would, as I view the matter, stand in an altogether different light. To my mind, they come into court with hands perceptibly soiled.

Another view: This school must be affiliated with some larger institution. It is incapable of standing alone under the laws of this state, without having greater financial strength and property than either of the corporations has yet attained. By mutual arrangements with Cotner University this has been accomplished. The relationship of the old corporation has been terminated. The parent institution may very properly sever its relations with the old because of its internecine strife, and may very properly refuse to renew such relations because of the management as then conducted; and this court is powerless to place the old corporation upon the footing where it stood in this respect at the time of the transactions complained of.

Again, a medical school of this character is in a measure under the control of, and subject to, the approval of the state board of health as to its standing, curriculum, and the character and ability of its faculty, in order that its graduates may become entitled to certificates from that board, authorizing them to engage in the practice of the profession of medicine. The old corporation probably has lost the required standing for such purposes. The new

may be presumed to measure up to these requirements. The student body of the new corporation, who are interveners—many of them, perhaps, nearing the point when they expect to receive their diplomas, obtain certificates from the state board of health and engage in their life-work—has interests in this litigation which far outweigh any equities that can possibly be possessed by the appellants. By the judgment resulting from the majority opinion, it is proposed to cancel the transfer of the property and assets of the old corporation to the new, reinstate the old corporation in all of its corporate rights and functions, and terminate the existence of the new. I do not understand that this court is concerned further than to determine whether, in any event, the appellants are entitled to have the transfer annulled, and the old corporation revived, to continue its corporate existence in carrying out the objects of its creation. The fact is that the new corporation is a different and distinct entity. New blood has been infused into it; different officers control its affairs. A different faculty is at the head of its educational work, and different individuals comprise its student body. It has assumed contract obligations of the old; paid off its debts, and given it a cash consideration for its assets and good will; and surely it can not be deprived of what it has thus acquired, by a court of equity decreeing a rescission of the contract, without some provision being made for repayment of the consideration thus passing from it to the old corporation.

The corporate affairs of the new organization have been conducted now for nearly three years, and it seems to me, as was found by the trial court, that the appellants are absolutely without any equities entitling them to any of the relief which they pray for, or which the allegations of their petitions will warrant or justify being extended to them.

The judgment of the district court should, in my judgment, be affirmed, and the judgment in this court first entered adhered to. Hence, I dissent.