CITY TRUST COMPANY OF OMAHA, APPELLEE v. BANKERS MORTGAGE LOAN COMPANY, APPELLANT.

FILED MAY 17, 1918. No. 20051.

1. **Corporations:** INTERLOCKING DIRECTORS. The fairness of contracts between corporations having directors in common must be shown by clear and convincing proof, and it must be made to appear that they are absolutely free from fraud.

2. **Principal and Agent:** UNAUTHORIZED CONTRACT: RATIFICATION. The ratification of an unauthorized contract can take place only where the person or body assuming to perform the act had the power either to do it or to authorize the doing of it in the first instance.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*William Baird & Sons* and *McGilton, Gaines & Smith*, for appellant.

*E. W. Simeral*, contra.

CORNISH, J.

Action for an accounting between the parties in reference, first, to an interest amounting to $35,000, in the note of $75,000, given by the W. D. Moore Lumber Company to the defendant, said $35,000 interest claimed by the plaintiff to have been assigned to it on February 8, 1915, as part consideration for the purchase from the plaintiff of safety deposit vaults, lease, and good will, the consideration for the vaults being

$75,000; second, for an accounting for rental of the vaults. The defendant denied liability, contending that the alleged sale of the vaults was an unlawful transaction and in fraud of its rights. From a judgment in favor of plaintiff, defendant appeals.

In September, 1913, the City Trust Company (plaintiff) and the Bankers Mortgage Loan Company (defendant) made a working alliance under which the business of the two companies should be carried on under one management, the profits of the two companies to be divided between them *pro rata* in proportion to their capital stock, each company to retain its name, business, and separate identity. In February, 1915, one John F. Flack was president of both of these corporations, and also of another, the City National Bank. Eleven directors of the City National Bank were on the board of fifteen directors of the plaintiff, and seven of these eleven directors of plaintiff, which included five of the directors of the City National Bank, were on the board of fourteen directors of the defendant.

At this time the Moore Lumber Company was indebted to the City National Bank in the sum of $190,000, which the bank was required by the federal authorities to have reduced. It was reduced by the lumber company's payment of $75,000, loaned to it by the defendant, and further reduced by fourteen of the directors giving their personal notes for $3,500 each to the bank in lieu thereof.

The plaintiff was the owner of a set of safety deposit vaults and a considerable business in connection therewith. At a meeting of directors of the plaintiff, held February 8, 1915, it was moved and carried that plaintiff sell to the defendant its safety deposit vaults, with lease and good will, "at a price of $40,001, and receiving in payment therefor $40,000 in cash or securities, plus $35,000 of the $75,000 W. D. Moore Lumber Company note," above mentioned, held by the defendant. On the same day defendant gave its check for $40,000, and the City National Bank passed a resolution

that the bank purchase the safety deposit vaults of the defendant for $75,000, giving in payment therefor 500⅔ shares of the common stock of the plaintiff, then owned by the bank, at a valuation of $50,000, and giving other good securities to the extent of $25,000. On March 4 following, at a meeting of the directors of the City National Bank, a resolution was passed rescinding the action of the board of February 8. On March 4 the plaintiff also passed a resolution to rescind its action authorizing the sale of the vaults to the defendant, the motion reciting, "with the consent and approval of the Bankers Mortgage Loan Company."

At the time of these several actions of the respective boards, the vaults in question had a valuation of not to exceed $40,000. They were being carried as an asset on the books of the plaintiff at $32,000. On March 8 the defendant received from the plaintiff a list of assets and securities, and from that time forward the alliance, or working agreement, between them was in the main discontinued, entirely so after April 3, 1915. On March 25 the plaintiff's board of directors reconsidered their resolution rescinding the sale contract and revoked the rescission. On April 3, 1915, plaintiff and defendant signed an instrument, entitled "Release, Waiver and Settlement," upon which plaintiff relies. It is signed on behalf of defendant by John F. Flack, president, and Walter Silver, secretary, and recites an executed sale to defendant of the vaults, etc., on February 8, "for the sum of forty thousand ($40,000) dollars, plus a portion of a seventy-five thousand ($75,000) dollar note, amounting to thirty-five thousand ($35,000) dollars;" that "John F. Flack, individually, is in controversy with the City Trust Company as to an irregularity in said sale;" that defendant "is desirous of selling said vaults to the City National Bank at a price of thirty-two thousand ($32,000) dollars;" that the working agreement for the sale of securities and division of profits between plaintiff and defendant has been terminated at the instance of the defendant; that "whereas

some controversy may hereafter arise by the termination of said working alliance and separation, as to any and all of the affairs of the respective corporations,'' the agreement is made. It further recites that a certain sum, $37,832.24, is due from plaintiff to defendant, and it is agreed that the plaintiff will pay to defendant $8,000, the difference between $40,000 and $32,000, "to cover the entire difference in controversy upon the sale of said vaults." It also recites that other amounts then due from plaintiff to defendant are not in controversy.

It appears not only that the vaults were not worth to exceed $40,000, but, further, that at the time of the sale the plaintiff did not expect to realize for itself to exceed $40,000, or $40,001, for the vaults, and in the final transaction, by which the City National Bank acquired title to the vaults from defendant, it paid for them only $32,000. It seems that the purpose of including the $35,000 interest in the $75,000 note, as part of the consideration for the vaults, was to provide a way that the fourteen directors, who had given their notes for $3,500 each, might be recouped in part for their losses represented by these notes. The officers and directors common to these interlocking boards no doubt knew the situation, and it is contended by defendant that the action of its officers and representatives constituted a violation of their trust relations to it, making the transaction itself unlawful. The vaults being worth not exceeding $40,000, the upshot of the transaction would appear to be that the defendant would receive no consideration for the $35,000 interest in the $75,000 note, assigned to plaintiff for the benefit of the directors of the City National Bank, either directly in its purchase of the vaults or indirectly in its sale thereof. The transaction as a whole was largely a matter of bookkeeping, although the defendant did give its check for the $40,000. This constituted a wrong upon the stockholders of the defendant, of which all parties had notice.

The learned trial judge appears to have based his finding in favor of plaintiff upon the settlement had between the parties April 3. The courts encourage settlements, especially when free from fraud, the parties having full knowledge of the facts. The evidence is conflicting as to what was understood by the parties in the settlement agreement, the evidence of defendant being that the only dispute between them, and the only one talked about, was whether the vaults should be taken at $40,000 or $32,000. This contention may appear somewhat contrary to the recital in the settlement, but, on the other hand, it is difficult to believe that the officers of the defendant, informed as to their rights and the facts, and acting in good faith, would agree to such a settlement.

The fairness of contracts between corporations having directors in common must be shown by clear and convincing proof, and it must be made to appear that they are absolutely free from fraud. The transaction of February 8 undertook to take an undue advantage of defendant, amounting to fraud, and was voidable at the instance of the defendant.

We are also of opinion that the agreement of April 3 cannot be held to amount to a waiver or confirmation of what was done on February 8. The ratification of an unauthorized contract can take place where the person or body assuming to perform the act had the power either to do it or to authorize the doing of it in the first instance. Flack and Silver, who signed the agreement of April 3, as president and secretary, in behalf of the defendant, were participants in the action of February 8. They could not ratify their own unauthorized act. It is probable that the action of February 8, which attempted to take out of the assets of the defendant corporation $35,000 without consideration, could not be ratified by the defendant corporation itself as long as any shareholder made timely objection. We are not speaking of ratification which might arise in

other ways, such as by acquiescence or retaining bene-fits with knowledge of the situation.

The defendant is not in a situation to restore to the plaintiff the vaults. It cannot claim any benefits from the settlement of April 3, and should account to the plaintiff for whatever, if anything, it may have realized out of the vaults in excess of $32,000. *McLeod v. Lincoln Medical College,* 69 Neb. 550, 555; 2 Thompson, Corporations (2d ed.) secs. 1241, 1242, 2002, and White's Supplement, sec. 2030; 2 and 3 Pomeroy, Equity Jurisprudence (3d ed.) secs. 964, 965, 1083.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, J., not sitting.