YIN TAI LUM *v.* HEE KWONG, HEE YOUNG, HEE YEE, HEE HAU, NG SHEONG HEE, HEE HOP AND L. KOON CHAN, LIMITED, AND MARTIN PENCE, INTERVENOR.

NO. 2802.

ARGUED MAY 23, 1952.                    DECIDED OCTOBER 7, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from the decree of a circuit judge sitting in equity dismissing a stockholder's suit brought by appellant against the appellee corporation, L. Koon Chan, Limited, and individual appellees to enjoin the dissipation of the assets of the corporation through the device of a lease of its real estate for an inadequate rental.

Appellant is a stockholder in the L. Koon Chan, Limited, owning 386 out of a total of 1600 shares outstanding; L. Koon Chan, Limited, is a corporation organized and existing under the laws of the Territory of Hawaii and owning certain premises situated at the corner of King and Nuuanu streets in Honolulu which, with its improvements thereon, constitutes the capital assets of the company; the individual appellees hold control of the stock of the company and control the board of directors of the corporation;

they are all members of one family. In addition to holding the control of the L. Koon Chan, Limited, respondent, the individuals also control a second Hawaiian corporation, the American Drug Company, Limited, through stock ownership and membership on its board of directors. The Hee family owns exactly 51% of the stock of the L. Koon Chan, Limited, and 71%-plus of the American Drug Company, Limited.

It is alleged that the respondents are securing benefit and advantage to themselves by a lease of a portion of the premises to the American Drug Company, Limited, at an inadequate rental of $515 a month; that such sum is substantially less than could be readily obtained therefor, and it was therefore unfair to those stockholders of L. Koon Chan, Limited, who were not stockholders of American Drug Company, Limited; that such lease was fraudulently contrived by the respondents to secure benefit and advantage to themselves as stockholders in the American Drug Company, Limited, at the expense and to the injury of the petitioner through diminution of dividends and the depreciation of his shares in the L. Koon Chan, Limited.

The verified answer of the appellees states that the $515 is adequate and all that could be obtained unless all the premises (in addition to the premises occupied by the American Drug Company, those occupied by the Hawaii Sales Company) be leased as a whole.

In examining this case it will be necessary to review previous history to a certain extent. Prior to 1945 the American Drug Company was a tenant of L. Koon Chan, Limited, at a rental of $515 per month. In 1945 appellees took up a proposal to lease the American Drug Company area and the Hawaii Sales Company area to the American Drug Company for $1000 per month. Appellant protested that such rental was inadequate and he himself offered a higher rental, to wit $1200 per month. However, appellees

went ahead and executed the lease to the American Drug Company over appellant's protests.

In July, 1945, appellant filed Equity Number 4531 to obtain a cancellation of this lease and for other relief; in the month of November, 1945, the directors of the L. Koon Chan, Limited, appellees herein, voted to terminate the lease which was the subject matter of Equity Number 4531 and on November 30, 1945, such lease was canceled and thereupon Equity Number 4531 was dismissed as involving a moot question. Upon cancellation of the lease involved in Equity Number 4531, the rental of the American Drug Company reverted to the previous $515 per month.

Thereafter, on April 5, 1946, the present equity suit was instituted. A verified answer was filed on June 27, 1946, as hereinbefore set forth. However, subsequent to the filing of the present case and the answer, and pending a hearing thereof, an outsider on September 30, 1946, made an offer to lease the American Drug Company premises for five years at $1200 per month but such offer was refused by the directors who instead made a lease to the American Drug Company for a period of five years at a rental of $800 per month plus 4% of the gross sales over $20,000 per month.

On November 4, 1946, Martin Pence, a stockholder of American Drug Company, filed an intervention alleging that such percentage of rental was excessive and unfair to the American Drug Company. Appellees answered the intervention suit of Pence stating that the existing percentage rental was adopted only as an interim measure pending the outcome of the litigation.

In November, 1946, and after the filing of this present suit, the American Drug Company offered to lease the present premises at a flat rental of $1000 per month for a period of ten years. In December, 1946, the directors discussed the offer of the American Drug Company but ac-

ceptance was deferred when appellant stated that the $1200 outsider offer was still open. On May 15, 1947, the directors voted to accept the offer of the American Drug Company of November 18, 1946, to rent the premises at $1000 per month with such lease to be for a period of five years only rather than for ten years.

On May 19, 1947, trial of the case began, the petitioner on the same day amending the prayer of the petition to read as follows: "That upon a hearing hereof being had, the said respondents be perpetually enjoined by order of this court from continuing such tenancy of American Drug Company, Limited, upon a monthly rental of less than $1500 net or if on a percentage lease basis at a monthly rental of not less than $600 plus 5% of the gross sales over $12,000 per month, or not less than such minimum rental as the court may find to be fair to the stockholders of L. Koon Chan, Limited." No additional pleadings were filed by the respondent-appellees after this change of rental agreement whereby the rent was increased from $515 per month to $1000 subsequent to the institution of this suit as heretofore set out.

On April 5, 1947, the deposition of A. L. Moses, real-estate expert and witness for appellant, was taken.

Testimony was taken from two additional expert witnesses on behalf of the petitioner to the effect that a monthly rental of $1500 was a fair rate; Moses, who had previously testified by deposition, based his return upon a flat rate plus a percentage of the gross receipts of the business.

On May 27, 1947, at the conclusion of the appellant's case the appellees and the intervenor moved to dismiss. The chancellor took the matter under advisement and more than two and a half years later, to wit December 31, 1949, filed his decision granting the motion.

In his decision the chancellor reviewed the history of

the litigation and then made his finding of law, holding that the appellant was bound to show, prima facie, that the rental was unfair, citing *Ching* v. *Service Cold Stor.*, 35 Haw. 306, and contrasted this with the general rule that the burden of proof of fairness is on the directors occupying conflicting positions, stating: "The Court is well aware of the statements in the texts, and the line of cases supporting the same, to the effect that those who would support transactions between corporations having directors in common must show their fairness (13 Am. Juris. #1001; Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 3, Sec. 974.) There is authority to the contrary, however, and, in this jurisdiction, the rule has been clearly announced that a stockholders' suit of this type must be dismissed if the petitioner has failed to establish a *prima facie* case, requiring the intervention of a court of equity." The court thereafter quoted from the case of *Ching* v. *Service Cold Stor.*, *supra,* as follows: " 'The petitioners alleged, and were bound to prove, *prima facie,* that eleven cents per quart, admittedly charged the corporation for milk by the respondent, T. F. Farm, was an extortionate and unreasonable price for said milk. Without such proof petitioners failed to sustain their bill.' (*Ching vs. Service Cold Storage Company,* 35 Haw. 306 at 310)."

The chancellor analyzed the various stock holdings in the lessor and lessee corporations of the several parties and concluded that only three of the directors were more interested in the lessee than the lessor corporation, and since only three of these eight directors had a greater interest in the lessee corporation concluded: "the Court would require clear and convincing proof that they had fraudulently contrived an arrangement to achieve such gains." The chancellor further stated that since the rental had been increased to $1000 per month since the institution of the suit but before the trial, $1000 per month was the rental

which appellant was bound to show, prima facie, to be unfair.

After reviewing the evidence the chancellor stated that the appellant's case rested almost entirely on convincing the court that a percentage lease was the only fair type and further stated that from his own knowledge there were numerous cases of interlocking directorships in this jurisdiction, that there were numerous instances of dealings between such corporations, and that "The question whether every such transaction is, at the instance of a minority stockholder, and in the absence of clear and convincing proof of wrongdoing on the part of the common directors concerned, to be subjected to the 'rigid scrutiny' of our courts of equity is a serious one."

We do not agree with the chancellor that the rule in this jurisdiction is to the contrary "of the statements in the texts, and the line of cases supporting the same, to the effect that those who would support transactions between corporations having directors in common must show their fairness (13 Am. Juris. #1001; Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 3, Sec. 974)."

It is true that a superficial reading of *Ching* v. *Service Cold Stor.* would seem to support the rule set forth by the chancellor and admittedly contrary to the weight of authority, but the *Service Cold Storage Company* case can be distinguished on the facts. In that case the evidence of the petitioner himself showed conclusively that the price charged for the milk was not unreasonable and the court, after reviewing certain evidence tending to show that the eleven cents per quart was fair, stated: "There is also other evidence given by petitioners' witnesses which we think established *beyond controversy* that said price was not and is not extortionate or unreasonable." (Emphasis added.)

It will also be noted that the *Service Cold Storage Com-*

*pany* case does not purport to overrule nor does it even discuss the case of *Bolte* v. *Bellina,* 15 Haw. 151, which held that where the directors of a corporation vote themselves salaries, the question of the reasonableness must be shown to be fair and reasonable by such directors, the court stating: "* * * if directors do vote to themselves salaries or other compensation, such salaries may be allowed to stand *if their entire reasonableness and fairness is shown by the parties benefitted thereby but not otherwise, and a rule more favorable than this the respondents cannot expect.* * * * In our opinion, the motion to dismiss should have been denied and the respondents should have been required to present their defense." (Emphasis added.)

The *Service Cold Storage Company* case is further distinguishable inasmuch as only one of the respondent directors had a dual interest; although it was alleged that he dominated the others, no evidence bore out the allegations. In the present case, however, all of the appellees are of one family and four of the six are not only officers, directors and stockholders of L. Koon Chan, Limited, but also are officers, directors and stockholders of the American Drug Company.

The relation of directors to corporations is a fiduciary one and the well-established rule both in Hawaii and in a majority of the States is that when fiduciaries deal with themselves relative to their trust property the burden is upon such fiduciaries to establish the fairness of the transaction. (*Dress Mfg. Co.* v. *Cadinha,* 36 Haw. 732, 742; *Watumull* v. *Ettinger,* 39 Haw. 185.)

In dealings between corporations with interlocking directors and officers, the same general rule is applied; *Geddes* v. *Anaconda Mining Co.,* 254 U. S. 590, 599, states the rule as follows: "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as

jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration."

This principle has been followed in numerous cases. (*Robotham* v. *Prudential Insurance Co.*, 64 N. J. Eq. 673, 53 Atl. 842; *Garrett* v. *Reid-Cashion Land and Cattle Co.*, 34 Ariz. 245, 270 Pac. 1044; *Mullins* v. *De Soto Securities Co.*, 56 F. Supp. 907; *Solmine* v. *Hollander*, 128 N. J. Eq. 228, 16 A. [2d] 203; 3 Fletcher, *Cyclopedia of Corporations*, § 974; 61 Harv. L. Rev. 335, note; *Bresnick* v. *Franklin Capital Corp.*, 6 N. J. Super. 579, 70 A. [2d] 524.)

In *City Trust Co.* v. *Bankers' Mortgage Loan Co.*, 102 Neb. 532, 167 N. W. 785, 786, it was stated that "The fairness of contracts between corporations having directors in common must be shown by clear and convincing proof, and it must be made to appear that they are absolutely free from fraud."

As stated by Mr. Justice Pitney (one of the outstanding justices among supreme court justices), in *Corsicana National Bank* v. *Johnson*, 251 U. S. 68, at page 90: "The fact that the same persons were directors and managers of both corporations subjects their dealings *inter sese* to close scrutiny. That two corporations have a majority or even the whole membership of their boards of directors in common does not necessarily render transactions between them void; but transactions resulting from the agency of officers or directors acting at the same time for both must be deemed presumptively fraudulent unless expressly authorized or ratified by the stockholders; and certainly where the circumstances show, as by the undisputed evidence they tended to show in this case, that the transactions would be of great advantage to one corporation at the expense of the

other, especially where in addition to this the personal interests of the directors or any of them would be enhanced at the expense of the stockholders, the transaction is voidable by the stockholders within a reasonable time after discovery of the fraud. [Citing cases.]"

The principle applies to leases as well as to other corporate transactions. (*Caldwell* v. *Dean*, 10 F. [2d] 299; 61 Harv. L. Rev. 335, 338.)

The statement of the chancellor that as only three of the directors had a greater interest in the lessee corporation than in the lessor corporation, and that therefore only these three would benefit if an inadequate rental were paid by the American Drug Company, overlooked the fact that the respondents were all members of one family; that family owned exactly 51% of the L. Koon Chan, Limited, while this same family owned more than 71% of the American Drug Company; that for every additional dollar rental paid by the American Drug Company the Hee family would receive 51% of such dollar as owners of 51% of the stock L. Koon Chan, Limited, but as owners of 71%-plus of the American Drug Company would pay 71%-plus of the rental. In other words, for every increase of one-dollar rental paid by the American Drug Company the Hee *family* would receive 51 cents of such dollar but would pay 71 cents of such dollar, a net loss of 20 cents per dollar.

Equity is equally alert in preventing a trustee from using his confidential position "for the benefit of a relative, an employer, an employee, or a partner." (*Watumull* v. *Ettinger*, 39 Haw. 185, quoting from *Iroquois Iron Co.* v. *Kruse*, 241 Fed. 433, 442.)

Obviously the chancellor overlooked or disregarded this benefit to the family as a whole in assuming that because only three of the directors would benefit by a reduction in the rental of the American Drug Company he would re-

quire "clear and convincing proof of wrongdoing on the part of the common directors concerned" to subject the transaction to the "rigid scrutiny" of the courts of equity. Incidentally, the case of *Corsicana National Bank* v. *Johnson, supra,* holds that the transaction is voidable by the stockholders where "the personal interests of the directors or any of them would be enhanced at the expense of the stockholders."

The fact, as observed by the chancellor below, that there are numerous Hawaiian corporations with interlocking directorates is not a valid reason for relieving the directors of their fiduciary obligations nor for the relaxation of the general rule covering their conduct; rather, the contrary. The obligations of a fiduciary are jealously guarded by courts of equity. When dealing with themselves the directors must prove beyond question that the action is for the benefit of the stockholders of the corporation. We agree thoroughly with the statement in *Geddes* v. *Anaconda Mining Co.,* 254 U. S. 590, at 599, in discussing the rule just stated, that "This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy."

Transactions by interlocking directorates with trust property afford such great opportunity and temptation for misuse or perversion of power by the trustees that the courts have promulgated the salutary rule of placing upon them the burden to prove the "entire fairness." An additional reason is that all the facts relative to such transactions are within the knowledge of the directors and they are in a position to justify, where possible, their actions.

Following, as we do, the rule of the majority of the States and of the United States Supreme Court in its many decisions, and particularly the *Geddes* case, *supra,* that the

fairness of the contract between corporations having directors in common must be shown by clear and convincing proof by those seeking to maintain such contracts, it is unnecessary to review at length the evidence regarding the fairness of the various rentals fixed except to point out that the appellees on several occasions fixed a rental below the amount testified to be fair by appellant's three witnesses over what apparently the premises would yield on the market, twice abandoned existing rentals and increased the same after legal proceedings were instituted, and, faced with the loss of a director on the board of directors by cumulative voting, called off a stockholders' meeting, and they also rejected an outsider's offer in excess of the consideration to be paid by the American Drug Company; this latter "generally indicates an inadequacy of consideration." (*Bresnick* v. *Franklin Capital Corp.* [N. J.], 70 A. [2d] 524.) Clearly, the acts of the appellees and other evidence given before the chancellor make the several rental contracts suspect and require the respondents to show the fairness of the contracts by "clear and convincing proof."

As the leasehold has already expired by its terms, the injunction sought cannot be granted but under the prayer for general relief the chancellor may, if he finds the petitioner's allegations true, grant other appropriate relief though not especially prayed for. As Lord Chancellor Hardwicke, quoting "very eminent counsel," said "general relief was the best prayer next to the Lord's prayer." (*Cook* v. *Martyn*, 2 Atk. 2, 3, 26 Eng. Rep. 399 [Ch. 1737].) Also, the case of *Eastern I. & M.* v. *Patterson, Et Als.*, 39 Haw. 346, deals with the question of granting appropriate relief when the relief specifically prayed for has become impossible to grant.

Reversed and remanded for further proceedings consistent with this opinion.

*J. G. Anthony* (*Robertson, Castle & Anthony* on the briefs) for appellant.

*R. G. Dodge* (*Heen & Kai* and *A. H. Spitzer* on the brief) for appellees.

*J. R. Cades* (*Smith, Wild, Beebe & Cades* on the brief) for intervenor-appellee.