[Civ. No. 20669. Third Dist. Mar. 24, 1982.]

JOANNE H. LEE, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM et al., Defendants and
Respondents;
EVELYN L. SHEEHAN, Real Party in Interest and Respondent.

**COUNSEL**

Eric O. Larsen and Robert H. Sharpe for Plaintiff and Appellant.

George Deukmejian, Attorney General, and William J. Power, Deputy Attorney General, for Defendants and Respondents.

Turner & Sillivan, Robert J. Sullivan and Mary A. O'Gara for Real Party in Interest and Respondent.

OPINION

**REYNOSO, J.\***—Plaintiff, Joanne Lee, appeals from a judgment entered denying her petition for a writ of mandate. Plaintiff sought to compel the Board of Administration (Board) of the Public Employees' Retirement System (PERS) to award her certain death benefits for the death of Thomas Sheehan. For reasons which follow, we will affirm the judgment.

We hold, as to the principle issue, that the statutory scheme gives preference to a surviving spouse over a designated beneficiary.

### FACTS

Thomas Sheehan (Thomas) was employed by the Department of Forestry of the State of California as a camp cook from December 1, 1958, until his death on October 6, 1978. As a result of his employment, Thomas was a member of the PERS. Thomas was also eligible for retirement on the date of his death, having attained age 50 with more than five years of service credit. (Gov. Code, § 20950.) He was not retired.

Thomas married real party in interest, Evelyn Sheehan (Evelyn), in November 1934. The couple separated in 1955 and Thomas then moved to California. The couple remained married but separated until Thomas' death in 1978.

Upon Thomas' death, Evelyn filed an application for the survivor's allowance and for the group term life insurance benefit, claiming those benefits as the surviving spouse pursuant to Government Code sections 21365.5 and 21400 et seq. Plaintiff applied for the basic death benefit and group term life insurance benefit, claiming as Thomas' designated beneficiary pursuant to Government Code sections 21204, 21205, 21365.1 and 21400 et seq.

The applications were heard in an evidentiary hearing before an administrative law judge (ALJ). On July 12, 1979, the ALJ rendered a proposed decision granting the application of Evelyn as to both the 1957 survivor's allowance and group term life insurance benefits. On

---

*Assigned by the Chairperson of the Judicial Council.

August 22, 1979, PERS rejected the proposed decision pursuant to Government Code section 11517, subdivision (c), and called up the administrative record to decide the case. A hearing was had on November 14, 1979, and on December 14, 1979, PERS rendered its decision and adopted with minor amendments the ALJ's proposed decision.

Plaintiff's petition for writ of mandamus in the Sacramento Superior Court, seeking to enforce what she asserts is her right in both the life insurance benefit and the basic death benefit was denied. She appeals.

I

As Thomas' designated beneficiary, plaintiff contends she is entitled to receive the basic death benefit as provided in the Government Code. (Gov. Code, § 21360 et seq.)[1] Section 21360 provides for a basic death benefit upon the death of a member before the effective date of retirement and while in state service. This benefit consists of both employee and employer (the State of California) contributions (Gov. Code, § 21361), and is payable in all cases where the retirement system is liable for either the basic or special death benefit and the special death benefit is not payable. (Gov. Code, §§ 21250, 21361.)[2] Section 21365.1 provides: "The basic death benefit ... shall be paid as provided in this article to the beneficiary designated by the member under Section 21204 or 21205." Section 21204 allows a member to "at any time designate a beneficiary to receive such benefits as may be payable to his beneficiary ... under this part, by a writing filed with the board." Pursuant to this section, Thomas had filed the appropriate form, naming plaintiff as his designated beneficiary. It is by way of this analysis that plaintiff claims her entitlement to the basic death benefit.

Plaintiff has failed to acknowledge the express provisions of section 21365.5, which provide for a "survivor's allowance" to the member's surviving spouse or minor children. The survivor's allowance is a special monthly allowance equal to one-half of and derived from the same sources as the unmodified retirement allowance a member would have received if he or she had been retired on the date of death. (Gov. Code,

---

[1]Hereafter, all statutory references are to the Government Code unless otherwise indicated.

[2]The participants herein agree provisions regarding the special death benefit are not applicable.

§ 21365.5.)[3] This allowance is payable only if the member attained the applicable minimum age for voluntary service retirement and was credited with five or more years of state service on the date of death. (*Ibid.*) More important, however, the allowance is payable only to the member's surviving spouse or minor children. (*Ibid.*) "Surviving spouse" or "wife" is defined as a spouse who was married to the member for a least one year prior to the member's death. (*Ibid.*) Further, the fourth paragraph of this section provides: "The allowance provided by this section *shall be paid in lieu of the basic death benefit* but a person, or such person's guardian, qualifying for the allowance may elect before the first payment on account of it to receive such basic death benefit in lieu of the allowance." (Italics added.) (*Ibid.*)

---

[3]Government Code section 21365.5 provides in pertinent part: "Upon the death of a member who has attained the minimum age for voluntary service retirement applicable to him or her in his or her last employment preceding death, and who is credited with five or more years of state service and in circumstances in which the basic death benefit is payable ... a monthly allowance equal to one-half of and derived from the same source as the unmodified retirement allowance which the member would have been entitled to receive if he or she had retired for service on the date of his or her death *shall* be payable:

"(a) To the surviving wife of a male member as long as she lives or until her remarriage; or

"(b) To a surviving husband of a female member as long as he lives or until remarriage; or

"(c) To the children under age 18 collectively if there is no surviving spouse or if the surviving spouse dies or remarries before all children of the deceased member attain age 18, until every child dies or attains age 18; provided, that no child shall receive any allowance after marrying or attaining the age of 18.

"Where a member does not have a surviving spouse nor any children under the age of 18 years at the time of death, no allowance shall be payable under this section.

" . . . . . . . . . . . . .

"The allowance provided by this section *shall* be paid in lieu of the basic death benefit but a person, or such person's guardian, qualifying for the allowance may elect before the first payment on account of it to receive such basic death benefit in lieu of the allowance.

"Any person who is receiving the allowance under this section on October 1, 1959, shall have the right to elect, not later than ninety (90) days after the date upon which notice of such right is mailed to him or her by this system, to receive in lieu of further payments of the allowance, a sum equal to the excess of the basic death benefit which was otherwise payable on account of the member's death over the sum of the monthly payments made prior to such election.

"If the total of the payments made hereunder is less than the basic death benefit which was otherwise payable on account of the member's death, the amount of the basic death benefit less any payments made pursuant to this section shall be paid in a lump sum as follows:

"(a) If the person last entitled to the allowance is the remarried spouse of such member, to such spouse;

"(b) Otherwise, to the surviving children of the member, share and share alike, or if there are no such children, to the estate of the person last entitled to the allowance.

"The board shall compute the amount by which benefits paid pursuant to this section

Plaintiff contends the survivor's allowance is applicable only when the member has either designated his or her spouse as beneficiary or when the member dies without having designated a beneficiary but leaving a surviving spouse. We disagree. There is nothing contained in section 21365.5 which expressly or impliedly makes the surviving spouse's eligibility for the allowance dependent upon his or her status as either designated or statutory beneficiary. To the contrary, section 21365.5 makes clear that where there is a surviving spouse and the deceased member dies prior to retirement (but after having attained the applicable minimum retirement age and having been credited with five or more years of state service at the time of death) the survivor's allowance *shall* be payable to the surviving spouse, and *shall* be paid in lieu of the basic death benefit. (Gov. Code, § 21365.5.) Plaintiff's interpretation would render meaningless this mandatory language. Any such construction is to be avoided. (*Hammarley* v. *Superior Court* (1979) 89 Cal. App.3d 388, 395-396 [153 Cal.Rptr. 608].) We conclude PERS is obligated to pay to the surviving spouse the survivor's allowance in lieu of the basic death benefit (unless the surviving spouse elects to receive the basic death benefit) and regardless of whether the member had designated one other than his spouse as his beneficiary.

This conclusion is buttressed by the language of section 21365.5 as it was orginally enacted in 1957, which expressed an intent to provide the survivor's allowance to a surviving spouse in derogation of the designated beneficiary's expectancy of the basic death benefit. The fourth paragraph of Section 21365.5 as originally enacted provided: "The payments provided by this section shall be paid in lieu of the basic death benefit but if the total payments made hereunder are less than the basic death benefit that would have been paid at the death of the member, the amount of the basic death benefit less any payments made pursuant to this action shall be paid to the beneficiary designated by the member." (Stats. 1957, ch. 2281, § 1, pp. 3980-3981.)

Pursuant to this language, PERS was directed to pay the allowance to the surviving spouse in lieu of paying the basic death benefit to the designated beneficiary. If, however, the total payments made under the

exceed the benefits which would otherwise be payable and shall charge any such excess against the contributions of the state so that there shall be no increase in contributions of members by reason of benfits paid pursuant to this section. As used in this section, 'a surviving wife' means a wife that was married to the member for at least one year prior to his death, a 'surviving husband' means a husband that was married to the member for at least one year prior to the member's death, and 'child' includes a posthumously born child of the member...." (Italics added.)

allowance were less than the amount otherwise payable as the basic death benefit (i.e., the surviving spouse died or remarried, prior to having received an amount equal to the basic death benefit), the excess was to be paid to the designated beneficiary, who might be someone other than the surviving spouse. Clearly, it was the Legislature's intent that the surviving spouse take precedence over the designated beneficiary, leaving to the designated beneficiary only that amount, if any, by which the death benefit exceeded the survivor's allowance. By way of subsequent amendments to section 21365.5, the Legislature has eliminated even this "excess expectancy" in the designated beneficiary, providing instead that the excess shall pass to either the surviving spouse, the minor children or the member's estate. (Stats. 1959, ch. 778, § 10, p. 2772.) There is thus no question that since its inception, section 21365.5 was intended to benefit the surviving spouse over the designated beneficiary.

Plaintiff's reliance on section 21365.1 in support of her assertion that a survivor's allowance is to be paid only when the surviving spouse was designated as a beneficiary (or when no beneficiary was designated) is misplaced. Section 21365.1 provides the basic death benefit "shall be paid *as provided in this article* to the beneficiary designated by the member under section 21204 or 21205." (Italics added.) The language "as provided in this article" manifests that payment of the basic death benefit is contingent upon other provisions contained in the applicable article of the Government Code, i.e., that other sections will determine how, when, and whether a designated beneficiary will receive payment of the basic death benefit. And, as section 21365.5 provides, when a member who qualifies under its provisions dies prior to retirement, the survivor's allowance *shall be paid to the surviving spouse* in lieu of any payment of the basic death benefit, unless the spouse elected instead to receive the basic death benefit.

Plaintiff makes one additional attack on the applicability of section 21365.5 when one other than the spouse has been named by the member as a designated beneficiary. Plaintiff relies on section 21204, which provides "a member may at any time designate a beneficiary" to receive benefits payable, and section 21211, which provides that "[i]f no beneficiary designation is in effect on the date of death, any benefit payable shall be paid to the survivors of the member in the following order: [¶] 1. [t]he member's spouse, [¶] 2. [h]is children, [¶] 3. [h]is parents." To accept the construction of section 21365.5 as suggested by PERS, argues plaintiff, would lead to the following result: If a member

does not designate a beneficiary, the spouse receives the survivor's allowance pursuant to sections 21211 and 21365.5; but even if the member does designate a beneficiary, the spouse nonetheless receives the survivor's allowance pursuant to section 21365.5 without any regard to the member's intent or designation of another as beneficiary. Plaintiff asserts that unless the Legislature intended to allow the member to make a meaningless designation of one other than his spouse as beneficiary, section 21365.5 can only be applicable where the member either designated his spouse as beneficiary or when the member failed to designate another as beneficiary.

While plaintiff makes a colorable argument in her behalf, the short answer to this contention is that section 21211 cannot be read in a vacuum. This section was enacted in 1970 contemporaneously with section 21205, which relates to the revocation of a beneficiary designation. (Stats. 1970, ch. 568, §§ 3, 4, p. 1140; see *Ruster* v. *Ruster* (1974) 40 Cal.App.3d 379, 381 [114 Cal.Rptr. 812].) Prior to the 1970 addition of section 21205, any designated beneficiary, including a former spouse, was entitled to receive death benefits regardless of whether the member remarried, had children, divorced, etc., so long as the member had not changed the designation prior to the member's death. (*Shaw* v. *Board of Administration* (1952) 109 Cal.App.2d 770, 774 [241 P.2d 635], overruled on other grounds in *Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675, 681-682 [336 P.2d 165].) Section 21205 was added to provide for automatic revocation of a designated beneficiary whenever the member married or dissolved his marriage, or upon the birth of a child, adoption of a child, etc. In turn, section 21211 was presumably added to ensure that when an automatic revocation occurred and the member thereafter made no designation of another beneficiary, the member's benefits would pass to the surviving spouse, children, parents or estate. There is nothing contained in section 21211, however, which supports plaintiff's assertion that this section was intended to affect the survivor's allowance otherwise provided by section 21365.5.[4]

Plaintiff asserts it is unjust to award benefits to Evelyn in light of the fact that all contributions made by Thomas to the basic death benefit were his separate property.

---

[4]Nor can it be argued that designating a beneficiary is a meaningless act whenever the member has a spouse or minor children. The spouse may predecease the member or the children may reach adulthood prior to the member's retirement. Having designated a beneficiary, however, the member will ensure his benefits pass to his intended beneficiary and not to his parents or estate. (See Gov. Code, § 21211.)

Thomas was separated from Evelyn during the entire time he worked for the State of California. Civil Code section 5118 provides the earnings and accumulations of a spouse while living separate and apart from the other spouse are the separate property of the working spouse. Because the basic death benefit consists primarily of an employee's contributions plus accrued interest, and because Evelyn would have had no claim to any of Thomas' earnings had the couple dissolved their marriage, plaintiff asserts Evelyn should not be entitled to any of Thomas' death benefits.

While we recognize the merits of plaintiff's contention, we must nonetheless follow the law as it is written. "Retirement benefits for state employees are wholly statutory, . . ." (*Hudson* v. *Posey* (1967) 255 Cal.App.2d 89, 91 [62 Cal.Rptr. 803]), and upon acceptance of public employment, provisions of the applicable pension law become an integral part of the contract of employment. (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799].) The Legislature has intended that the surviving spouse of a deceased member receive the member's death benefits even though the member may have designated another as his or her beneficiary. (Gov. Code, § 21365.5.) Because the survivor's allowance was a part of the code at the time Thomas was employed by the state, Evelyn is entitled to the survivor's allowance irrespective of whether Thomas' contributions to the retirement fund were separate or community property. While section 21365.5 works on obvious injustice under the facts of this case, the fact remains that the courts must take a statute as they find it. (*Bock* v. *City of Oakland* (1937) 19 Cal.App.2d 115, 117 [64 P.2d 1098].) If its operation results in inequity or hardship in some cases, the remedy therefor lies with the legislative body. (*Jordan* v. *Retirement Board* (1939) 35 Cal.App.2d 653, 658 [96 P.2d 973].)

We conclude section 21365.5 entitles the surviving spouse to a survivor's allowance in derogation of whatever expectancy might have been established in the designated beneficiary. Plaintiff's assertion to the contrary must be rejected.

## II

Plaintiff contends she is entitled to the group term life insurance benefit as set forth in section 21404. Again we disagree. Under this section, assuming all of the conditions relating to the insured member's

death have been satisfied, the group term insurance benefit is to be paid to "the beneficiary entitled to receive the basic death benefit."[5]

As Thomas' surviving spouse, Evelyn, pursuant to section 21365.5, has the option of electing either the survivor's allowance or the basic death benefit. Thus, when section 21365.5 is applicable, the surviving spouse is the statutorily prescribed beneficiary *and the only beneficiary entitled to receive the basic death benefit.* While plaintiff may have been Thomas' designated beneficiary, she was not a person entitled to receive the basic death benefit, and thus her claim to the group term life insurance benefit must fail.

### III

Plaintiff contends that even if she is not entitled to receive any benefits because of the applicability of section 21365.5, PERS is nonetheless estopped from denying her claim to said benefits. Plaintiff points to literature distributed by PERS to its members informing them that their statutory beneficiaries will receive the member's death benefits unless the member fills out a form designating another as his or her beneficiary. This literature, claims plaintiff, is misleading in that if it fails to inform the member that a designated beneficiary is not entitled to receipt of any benefits should the member (1) die prior to retirement, and (2) leave a surviving spouse. (See *ibid.*) Plaintiff contends that because the PERS literature was erroneous, or at least incomplete, PERS should not now be permitted to thwart Thomas' obvious intent, which was to leave his benefits to one other than his surviving spouse.

"Generally, whether estoppel exists is a factual question and ordinarily the determination of the trier of fact is binding on appeal

---

[5]The statutory scheme for the group term life insurance benefit is set out in Government Code section 21400 et seq. Section 21404 provides for payment of this benefit as follows: "The insurance benefit shall be paid upon death of an insured member of this system *to the beneficiary entitled to receive the basic death benefit* if all of the following conditions concur:

"(a) Death occurs either:
"(1) While in such state service; or
". . . . . . . . . . . . .
"(b) If either:
"(1) Death occurs while a member and before the effective date of retirement;
". . . . . . . . . . . . .
"(c) Death occurs during a period of insurance.
"(d) Death occurs under circumstances other than those described in subdivision (a)(5) of Section 21360." (Italics added.)

In this case, the insurance benefit is $5,000. (See Gov. Code, § 21405, subd. (a).)

unless the contrary conclusion is the only reasonable one to be drawn from the facts. [Citations.] The burden is on the one asserting estoppel to prove its essential elements, 'leaving nothing to surmise or questionable inference.' [Citation.]" (*Bank of California* v. *Connolly* (1973) 36 Cal.App.3d 350, 365-366 [111 Cal.Rptr. 468].)

█ We note, first and foremost, that this is not the usual setting in which the issue of estoppel is raised. Generally, the party claiming estoppel is the party who has relied to his detriment upon the words or conduct of another. Plaintiff has made no such reliance; she is simply seeking to enforce what she contends is a benefit another intended she receive. Thus, serious questions are raised concerning whether plaintiff has standing to raise the issue of estoppel.

Even assuming plaintiff has standing, however, her claim must fail. Factors to be considered in a claim of estoppel against a public agency include consideration of the degree of negligence or culpability of the public agency (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 307 [61 Cal.Rptr. 661, 431 P.2d 245]), whether and to what extent the agency is certain of the knowledge or information it dispenses (see *Phillis* v. *City of Santa Barbara* (1964) 229 Cal.App.2d 45, 60 [40 Cal. Rptr. 27]), whether it purports to advise and direct or merely to inform and respond to inquiries (see *Tyra* v. *Board of Police etc. Commrs.* (1948) 32 Cal.2d 666, 670 [197 P.2d 710]), and whether it acts in bad faith. (See *Lorenson* v. *City of Los Angeles* (1953) 41 Cal.2d 334, 340 [260 P.2d 49].)

Plaintiff makes no claim of bad faith on the part of PERS, and it is clear no such claim could be made. As to the degree of negligence or culpability of PERS, we agree with plaintiff that the information provided in the distributed literature is far from complete; indeed, unless the literature is read as a whole, it would be difficult for anyone to conclude other than that a member has a plenary power to *effectively* designate anyone he desires as his beneficiary.

It is because the literature must be read as a whole, however, that we conclude there is no estoppel. The retirement pamphlets distributed by PERS (and which were entered into the record) make clear that the information provided therein is general and simplified and does not purport to be the definitive statement of the retirement law. Thus, in the "Introduction" section of the 1977 PERS pamphlet on retirement

benefits, the following appears in italicized form: "While reading this material, remember that we are governed by the 'Public Employees' Retirement Law' and it is the basis of all of our decisions. The statements in this booklet are general and we have made them as simple as possible while still being accurate. The Retirement Law is sometimes very complex, but when there is a conflict, any decision will have to be based on the Law and not this booklet." A similar caveat is provided in the 1973 PERS pamphlet entitled "Retirement and Related Benefits:" "The statements in this booklet are general and simplified as much as possible, consistent with accuracy. The law is both specific and detailed. Regardless of any inferences any reader may draw, the law must be obeyed. If there is any conflict, the law takes precedence."

In light of the express caveats presented in each of the PERS pamphlets distributed to its employees, it cannot be said PERS is estopped to deny benefits to plaintiff. Moreover, it is our opinion that estoppel cannot be applied against a public agency in every instance where its erroneous or incomplete representations results in damage to a claimant. This is particularly true where the subject matter involved is as detailed and complex as is the retirement scheme set up for state employees. In light of the myriad of "optional settlements" (e.g., Gov. Code, §§ 21330-21335), distribution and types of benefits (e.g., Gov. Code, §§ 21360-21367), and other provisions regarding retirement (e.g., § 21200 et seq.), the information presented in the PERS literature could not be anything more than a rudimentary overview of the system and how it operates. Because PERS makes this point clear to its members, there can be no cause for complaint.

Finally, we note that even if Thomas had been provided the "complete" information regarding section 21365.5 and its applicability, he could not have changed the legal effect of this section without having either dissolved his marriage or retired prior to his death. This in turn leads to another issue; namely, that estoppel will not be applied where it is based on surmise or questionable inference. (*Bank of California* v. *Connolly, supra,* 36 Cal.App.3d 350, 365-366; *Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 758-759 [101 Cal.Rptr. 335].) Plaintiff contends that had Thomas been provided the complete (i.e., correct) information, he would have either dissolved his marriage or sought early retirement in order to ensure his benefits be received by plaintiff, his designated beneficiary. This assertion is total conjecture. While the record supports the assertion that Thomas intended his benefits be received by plaintiff, the record is entirely unclear whether Thomas would

have dissolved his marriage to ensure such a distribution of his benefits. Thomas had not spoken with Evelyn for over twenty years, yet there is nothing in the record to suggest he at any time contemplated dissolving his marriage.[6] The question whether Thomas would have elected early retirement is also speculative. He might have wanted to continue working until the last possible moment in order to accrue a greater amount of retirement benefits. The record is devoid of any showing that Thomas would have accepted a financial loss simply to ensure plaintiff's receipt of benefits. Because it cannot be determined with any amount of certainty that Thomas relied to his detriment on the "incomplete" information distributed by PERS, plaintiff's claim of estoppel must fail.

IV·

■ Plaintiff contends she was deprived of due process because the Board reconsidered a "decision" it had made in plaintiff's favor. A brief background is required.

At the hearing on November 14, 1979, the Board was presented with the question whether to adopt the proposed decision of the ALJ which had denied plaintiff's claim of benefits and instead awarded the benefits to Evelyn. The Board, after hearing and argument, voted against adopting the proposed opinion of the ALJ, and in turn voted to direct the executive officer to prepare a decision in favor of plaintiff. Thereafter, the executive officer prepared three different decisions for the Board's consideration: alternative "A" directed the proposed decision of the ALJ be adopted and plaintiff's claim be rejected; alternative "B" directed the Board make an award of benefits only to plaintiff; and alternative "C" directed the Board award benefits to both plaintiff and Evelyn. Counsel for all parties were given notice of these alternative proposals and were likewise provided an opportunity to comment on said proposals at the hearing held before the Board in December 1979. Thereafter, the Board retired into executive session to deliberate the alternatives, and subsequently voted to adopt alternative "A," i.e., the proposed decision of the ALJ awarding benefits only to Evelyn.

Plaintiff contends the Board's "decision" at the November 14, 1979, hearing to reject the decision of the ALJ and to instead direct the ex-

---

[6]There is evidence in the record that Thomas and Evelyn were married in a Roman Catholic ceremony. Whether this fact had any effect on Thomas' failure to dissolve the marriage is also left to conjecture.

ecutive officer to prepare a decision in favor of plaintiff was a final, binding decision that could only be reconsidered upon proper motion. There is no merit in this assertion. The Board did not adopt a final, binding decision at that hearing. Decisions must be in writing and contain findings of fact and a determination of the issues involved. (Gov. Code, §§ 11501, 11518.) The Board's action at the November 14 hearing was simply a direction to its staff to *prepare* for consideration a decision in plaintiff's favor. Indeed, the Board repeatedly made this point clear subsequent to its vote denying the motion to adopt the ALJ's decision and directing a decision be prepared awarding benefits to plaintiff. Since there was no decision rendered at the November 14 hearing, however, the Board's subsequent decision at the December 14 hearing was entirely proper. Plaintiff's subjective interpretation of what transpired at the November 14 hearing can in no way be mystically transformed into a deprivation of due process.[7]

## V

While the facts presented in this case appear to work an injustice against plaintiff, we believe our ruling to be correct. The Legislature in its wisdom has decided the surviving spouse and minor children of a member are to be protected, even if this results in denying benefits to one the member has designated as his beneficiary. Most likely, the Legislature did not envision a situation such as that posed; yet, no one can reasonably expect the Legislature to foresee all possible situations and to safeguard against the same. Nonetheless, it is not within the province of this court to commence carving out exceptions to a statutory scheme which may in an unusual case work a hardship or inequity on one of the parties.

The judgment is affirmed.

Blease, Acting P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 9, 1982.

---

[7]Plaintiff's additional arguments that she "is informed and believes" members of the Board improperly considered the merits of the case after retiring to executive session, and that members of the Board who were not present at the November 14 hearing voted at the December hearing, are without any support in the record and thus require no comment.