PER CURIAM.
The Employees’ Retirement System of Alabama (“ERS”) and its Board of Control appeal from a summary judgment entered in favor of R. Marcus Givhan, as executor of the estate of Marion Callen Stothart. We reverse and remand.
During her lifetime, Stothart was a employee of the State of Alabama and a member of ERS; she was diagnosed with lung and brain cancer on February 17, 2002. On May 31, 2002, Stothart, who was 64 years old at the time, completed a form application for retirement benefits. Because Stothart had indicated to ERS her intent to retire, ERS prepared a written estimate of the potential benefits Stothart could expect to receive; that document disclosed that Stothart could expect to receive $649.06 per month for the remainder of her life, with “all benefits ceasing at” her death, if she elected the “maximum retirement allowance” permitted by law. On July 23, 2002, Stothart executed a verified “Member’s Election of Retirement Benefits” form in which she indicated that she had been advised of the estimated maximum retirement allowance to which she was entitled and of “certain optional modifications thereof’; she requested the maximum retirement allowance.
Stothart retired from her employment on September 1, 2002, and died one month later on October 1, 2002. Stothart received one benefit payment in the amount of the maximum monthly retirement benefit before her death on October 1, 2002. Following Stothart’s death, Givhan, Stot-hart’s son and the executor of her estate (hereinafter “the executor”), contacted ERS; the executor was informed that Stothart had elected to receive the maximum retirement allowance and that Stot-hart’s estate was therefore entitled only to a “one time prorata payment for the number of days that [Stothart] lived in the month of her death.”
On November 19, 2002, the executor appealed from that determination to the ERS Board of Control, pursuant to Rule 800-2-3-.06, Ala. Admin. Code (Retirement Sys. of Alabama); he requested that ERS provide benefits to the estate in accordance with the actuarial equivalent benefit such that Stothart’s estate would receive the amount of money Stothart had contributed to ERS during her employment plus interest. On December 4, 2002, the ERS Board of Control denied the request. On January 3, 2003, the executor filed a notice of appeal with ERS and a petition for judicial review of ERS’s decision in the Montgomery Circuit Court; in his petition, the executor averred that Stothart “lacked capacity” to make an election of benefits at the time she had executed the election-of-benefits form.
*1045 On June 30, 2003, the executor moved for a summary judgment. In support of the motion, the executor presented the affidavit of Dr. Benjamin Banks Fuller. Dr. Fuller averred that he had treated Stothart to remove a cancerous tumor from her brain; that Stothart had undergone radiation therapy to the brain and chemotherapy to the widely metastatic cancer; and that Stothart was receiving multiple medications,, including steroids and pain medicines, at the time she had executed the election-of-benefits form. Dr. Fuller opined that Stothart “did not have the capacity to make intelligent and voluntary decisions during the summer of 2002.” The executor also presented an affidavit from a registered nurse who stated that on August 15, 2002, Stothart had been admitted to hospice care with a diagnosis of lung cancer that had metastasized to her liver and brain; that affiant also opined that, at that time, Stothart had been unable “to make voluntary and intelligent decisions on her own.”
On July 23, 2003, ERS filed a cross-motion for a summary judgment based on Ex parte Employees’ Retirement System Board of Control, 767 So.2d 331 (Ala.2000) (“Ex parte ERS”), a case in which the Alabama Supreme Court reversed a judgment permitting the widow of a state employee to receive retirement benefits from ERS despite her deceased husband’s election to receive a maximum retirement allowance. In support of the motion, ERS presented the affidavit of Don Nelson, its director of benefits, who stated that Stot-hart had elected to receive the maximum retirement allowance, and the exhibits to that affidavit, which included Stothart’s application for retirement, the benefits statement prepared by ERS, and Stothart’s election-of-benefits form. In its summary-judgment motion, ERS argued that even if Stothart had not made an election, she would have automatically received the maximum retirement allowance pursuant to § 36-27-16(a), AlaCode 1975.
Following a hearing on the parties’ motions, the circuit court determined that Stothart, in 1991, had executed a durable power of attorney appointing the executor to act as her lawful agent in the event of her incapacity. The circuit court deemed Stothart’s election-of-benefits form invalid on the basis that Stothart had lacked the mental capacity to make intelligent and voluntary decisions on her own when she signed the election-of-benefits form on July 23, 2002, and on the basis that that form had not been signed by any individuals that Stothart had authorized to act on her behalf in the event of her incapacity. Although the circuit court acknowledged the Supreme Court’s decision in Ex parte ERS, the circuit court distinguished that decision on two bases: (1) the employee in Ex parte ERS lived longer than Stothart after his retirement; and (2) the employee in Ex parte ERS had not been incapacitated at the time he elected to receive the maximum retirement benefit.
The circuit court also rejected ERS’s argument that, even assuming that Stot-hart was incapacitated at the time she signed the election-of-benefits form, she would have been due to receive, by default, the maximum retirement allowance pursuant to § 36-27-16(d). Asserting that “a court sitting in equity has broad power to fashion remedies which are equitable under given circumstances,” the circuit court concluded that equity would be served by allowing the executor to choose the actuar-ially equivalent retirement-benefits option that the estate had requested in its petition for review; the circuit court awarded Stothart’s estate the “unpaid balance” of “annuity savings” in Stothart’s ERS account.
*1046 ERS appeals, arguing that Ex parte ERS is not distinguishable from the present case. ERS also has renewed its argument that under § 36—27—16(d), Ala. Code 1975, Stothart was due to receive the maximum retirement benefit even if she had not validly selected that option in her election-of-benefits form. Because ERS’s second argument is dispositive of the appeal, we pretermit consideration of ERS’s first argument.
Section 36-27-16(a)(l)a., Ala.Code 1975, provides, in pertinent part, that any member of the ERS who withdraws from service after reaching the age of 60 years “may retire upon written application to the [ERS] Board of Control.” Section 36-27-16(a)(2), Ala.Code 1975, specifies the “maximum” service-retirement allowance payable to a retired state employee. That allowance “is paid for life and does cease at death.” Employee’s Retirement Sys. Of Alabama v. McKinnon, 349 So.2d 569, 573 (Ala.1977).
In lieu of receiving that maximum allowance, any ERS member may choose from among the following actuarially equivalent reduced-retirement allowance “options”: (1) electing to receive annuity payments that are payable to the member and to the member’s nominee(s) if the member dies before receiving payments equal to “the present value of [the] annuity as it was at the time of [the member’s] retirement”; (2) electing a reduced-retirement allowance that is payable to the member and, after the member’s death, to another designated person over that person’s remaining lifetime; (3) electing that one-half of a member’s reduced-retirement allowance be paid after the member’s death to another designated person over that person’s remaining lifetime; or (4) electing some other reduced-retirement-payment plan that is certified to be of equivalent actuarial value to the member’s retirement allowance and approved by ERS’s Board of Control. See § 36-27-16(d), Ala.Code 1975. However, that statute also provides that any election to receive a reduced-retirement benefit is to be made “prior to retirement.” Ala.Code 1975, § 36-27-16(d) (emphasis added); accord, Ala. Admin. Code (Retirement Sys. of Alabama) r. 800-2-1-03(1) (members electing to receive an optional allowance must make that election on a form duly prescribed by ERS “no later than the first of the month[] during which their retirement is to be effective”). ERS regulations provide that if ERS “is not notified of a member’s election to receive an optional allowance, then such member shall automatically receive the maximum retirement allowance.” Ala. Admin. Code (Retirement Sys. of Alabama) r. 800-2-l-.03(2).
Assuming, without deciding, that the circuit court correctly concluded on the record before it that Stothart’s incapacity rendered her July 23, 2002, election-of-benefits form void, neither Stothart nor any other person that may have been authorized to elect any of the four optional reduced-retirement allowances pursuant to § 36-26-17(d) on her behalf elected any of those allowances and notified ERS of that election before Stothart retired on September 1, 2002. Because no such election was made at that time, the executor, whether purporting to act pursuant to his agency created under Stothart’s power of attorney[1] or pursuant to letters testamentary, would have had no power to make a legally valid election on behalf of Stothart after her retirement.
We note that the circuit court was clearly moved in this case to “do equity,” *1047 ie., to alleviate a seemingly harsh result by directing ERS to make payments to the estate of a longtime State employee in lieu of enforcing the provisions of § 36-26-17. However, it is a well-settled maxim that “[e]quity follows the law.” See, e.g., Scott v. Kelley, 745 So.2d 872, 877 (Ala.Civ.App.1999). Here, “the law” has been set forth by our Legislature: a valid election to receive anything other than the maximum retirement benefit, terminable upon an ERS member’s death, must be made prior to the retirement of that member. Just as the Alabama Supreme Court has held that a “surprised, disappointed, or disgruntled beneficiary [may not] change an ERS member’s retirement-benefits election that is clear on its face,” Ex parte ERS, 767 So.2d at 335, the judiciary may not properly countenance a posthumous challenge to the sub silentio “clear, unambiguous election of retirement benefits” that has been mandated by our Legislature to apply in the absence of a contrary election by an ERS member; to permit such a challenge “would wreak havoc on the retirement system” administered by ERS. Id.
The decision of the ERS Board of Control denying payment of benefits to Stot-hart’s estate was correct as a matter of law and should have been upheld, not reversed, by the circuit court. The judgment of the Montgomery Circuit Court is reversed, and the cause is remanded with instructions to enter a judgment in favor of ERS.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially, with writing.
YATES, P.J., dissents, with writing, which THOMPSON, J., joins.

. Such agency would arguably have been revoked upon the death of the principal, i.e., Stothart. See Streit v. Wilkerson, 186 Ala. 88, 91, 65 So. 164, 165 (1914).