120 P.3d 237

**Katsumi HONDA, Deceased, by Arlene S. KAMAKANA, Special Administrator of the Estate of Helen Shizuko Honda, Deceased, Petitioner, Appellant–Appellee**

v.

**BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF The STATE OF HAWAI'I, Appellee–Appellant.**

No. 23625.

Supreme Court of Hawai'i.

Sept. 15, 2005.

Reid A. Nakamura and Kurt K. Leong (Oliver, Lau, Lawhn, Ogawa & Nakamura), in opposition, for appellant-appellee.

NAKAYAMA, ACOBA, JJ., and Circuit Judge DEL ROSARIO, In Place of DUFFY, J., Recused; and LEVINSON, J., DISSENTING, with Whom MOON, C.J., Joins.

Opinion of the Court by ACOBA, J.

Appellee–Appellant Board of Trustees of the Employees' Retirement System of the State of Hawai'i (the ERS or ERS Board) filed a motion for reconsideration (the motion) of this court's June 17, 2005 published opinion (the opinion), which (1) vacated the July 28, 2000 final judgment of the circuit court of the first circuit (the court) and (2) remanded the case to the court with instructions to remand the case to the ERS to hold further proceedings. *Honda v. Bd. of Trs. of the Employees' Ret. Sys.*, 118 P.3d 1155, 1157 (Haw.2005).

In the motion, the ERS Board argues that this court has violated the separation of powers doctrine by (1) "cloaking the ERS with the jurisdiction to decide contract and tort claims," (2) "waiving the State's sovereign immunity for those claims," and (3) "vesting the court with the legislative function of deciding a new set of fiduciary duties for ERS." It requests that this court "reconsider [the] opinion and decide this appeal on the arguments presented in the parties' briefs." In the alternative, the ERS Board asks that this court vacate the opinion and allow the parties to brief this court regarding the matters decided in the opinion and the question of whether the untimely passing of Petitioner/Appellant–Appellee Helen Honda (Helen) has rendered some or all of the issues presented in this appeal moot.[1]

On August 15, 2005, this court filed an order directing Helen to respond to the motion for reconsideration. On September 2, 2005, Helen filed a memorandum in opposition to the motion, arguing that (1) the opin-

Russell Suzuki and Adina Kobayashi Cunningham, Deputy Attorneys General, on the motion, for appellee-appellant.

1. Helen died on May 30, 2003. On August 25, 2005, Arlene S. Kamakana (Kamakana), Special Administrator of the Estate of Helen Shizuko Honda, was substituted as the proper party Appellee pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(a) (2005). For purposes of this opinion, however, the reference to Helen made in the original opinion is retained.

ion does not require ERS to adjudicate tort and contract claims, (2) the opinion does not waive sovereign immunity for tort and contract claims, and (3) ERS and its trustees have a fiduciary duty to its members. Inasmuch as the opinion did not "overlook" or "misapprehend" the matters raised by the ERS, the motion for reconsideration is denied.[2]

### I.

In its first point, the ERS Board argues that the ERS does not have jurisdiction to decide remedies under Hawai'i Revised Statutes (HRS) chapters 661 and 662[3] because the circuit courts have original jurisdiction to hear contract and tort claims against the State and the ERS can only interpret and apply HRS chapter 88. These arguments are based upon a misreading of the opinion.

### A.

The ERS Board states that the opinion "*appears* to vest ERS with the jurisdiction to decide and provide remedies for claims for rescission of contract and the torts of breach of fiduciary duty and negligent misrepresentation." (Emphasis added.) The opinion, however, does not direct the ERS to "decide civil, judicial remedies," but remands the case to the ERS Board for it to hold further proceedings in light of its fiduciary duty to retirees. 118 P.3d at 1157, 1166. The theories of unilateral mistake and negligent misrepresentation were discussed in the opinion to illustrate the basis upon which the ERS's failure to provide Katsumi Honda (Katsumi) "with clear, understandable information con-

cerning retirement benefits" might be premised. 118 P.3d at 1157. Indeed, as the opinion states, the court's judgment was vacated and the case *remanded* "pursuant to HRS § 91–14(g)."[4] 118 P.3d at 1166. Accordingly, this court did not "overlook" or "misapprehend" the ERS Board's jurisdiction to decide and provide remedies.

### B.

The ERS Board further argues that "[n]o statute authorizes ERS to allow an as-yet unasserted estate or personal representative of a beneficiary to change an ERS member's retirement option" and that "[o]n remand, ERS is therefore left in the position of either exceeding its statutory authority or violating this court's order." First, it should be noted that none of the parties notified this court of Helen's death prior to the filing of the opinion. Hence, this court could not have "misapprehended" a fact that was never presented to it.

According to a declaration attached to the motion, Deputy Attorney General Diane S. Kishimoto spoke with Helen's attorney, Reid Nakamura, on June 21, 2005, at which time he informed her that Helen "had passed away approximately two years ago." Kishimoto declares that to "the best of [her] knowledge, this [was] the first time [the ERS Board had] learned of [Helen's] death."

Pursuant to HRAP Rule 43(a),

[i]f a party dies after the notice of appeal is filed, or while the proceeding is otherwise pending in a Hawai'i appellate court, *that court may substitute the personal repre-*

---

**2.** HRAP 40(b) (2005) provides that a motion for reconsideration "shall state with particularity the points of law or fact that the moving party contends the court has overlooked or misapprehended, together with a brief argument on the points raised."

**3.** HRS chapter 661 governs actions by and against the state and HRS chapter 662 is the State Tort Liability Act.

**4.** HRS § 91–14(g) (1993) provides:
   (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the peti-

tioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
   (1) In violation of the constitutional or statutory provisions; or
   (2) In excess of the statutory authority or jurisdiction of the agency; or
   (3) Made upon unlawful procedure; or
   (4) Affected by other error of law; or
   (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
   (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*sentative of the deceased party as a party on motion filed by the representative or by any party with the appellate clerk.* The motion of a party shall be served upon the representative in accordance with the provisions of Rule 25. *If the deceased party has no representative, any party may suggest the death on the record, and proceedings shall then be had as that court shall direct.*

(Emphases added.) In the criminal context, HRAP Rule 43 has been construed to afford the appellate court with two options in the absence of a motion for substitution as follows:

> The appellate court may, in its discretion, allow for substitution of a proper party-defendant. Absent such a motion, the appellate court may, in its discretion, either (1) dismiss the appeal as moot, vacate the original judgment of conviction, and dismiss all related criminal proceedings, or, in the alternative, (2) enter such other order as the appellate court deems appropriate pursuant to HRAP Rule 43(a).

*State v. Makaila,* 79 Hawai'i 40, 45, 897 P.2d 967, 972 (1995).

Because a "death" of a party had been "suggest[ed]," on August 11, 2005, this court ordered (1) Nakamura to confirm Helen's death by filing a death certificate in this court and (2) for either party to move for substitution of a proper party Appellee pursuant to HRAP Rule 43(a) or advise this court that no motion would be filed. On August 25, 2005, following the probate court's appointment of Kamakana, Helen's daughter, as Special Administrator of the Estate of Helen Shizuko Honda, Nakamura filed a motion to substitute Kamakana as the proper party Appellee. This court granted the motion for substitution on August 25, 2005. *See supra* note 1. A representative of the beneficiary has thus been identified. If in any way relevant, the event of Helen's death has become part of a case which has been remanded. Therefore, this matter was not "misapprehended" or "overlooked."

Second, it should be emphasized that because "the ERS made no findings with respect to the specific nature and sufficiency of information provided to Katsumi," 118 P.3d at 1166, the opinion remands the case to the ERS to hold further proceedings "in the framework of the entire record and in view of the ERS's fiduciary duty to retirees," *id.* The opinion confirms the ERS's fiduciary duty, but the application of that duty has been remanded to the board in light of the principles established in the opinion. As discussed *infra*, the remand is consistent with HRS chapter 88 and, hence, does not compel the ERS Board to "exceed[ ] its statutory authority."

## II.

■ Relatedly, in its second argument, the ERS Board maintains that the courts cannot waive the State's sovereign immunity because, (1) pursuant to *Chun v. Bd. of Trustees of the Employees' Retirement Sys.,* 106 Hawai'i 416, 106 P.3d 339 (2005), the legislature must expressly waive immunity, (2) pursuant to *Pele Defense Fund v. Paty,* 73 Haw. 578, 609–10, 837 P.2d 1247, 1266 (1992), "relief that is tantamount to an award of damages for a past violation of law, even though styled as something else, is barred by sovereign immunity[,]" and (3) pursuant to *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), equitable restitution, like other forms of damages, is barred by the state's sovereign immunity.

As in the first argument, however, these points all stem from the ERS Board's presumption that the opinion determined contract and tort remedies. It should also be noted that the ERS did not raise the issues of sovereign immunity and "retrospective injunctive relief and damages" until after the opinion was filed. Accepting its view of the essential nature of the case, for the sake of argument, the ERS had multiple opportunities to raise the defense.

Although Helen's request for "a declaratory order ... allowing [her] to select a new mode of retirement for Retirant Katsumi Honda, deceased, to be effective retroactively to April 1, 1994[,]" and the court's order implicated what the ERS now characterizes as sovereign immunity concerns in reference to "retroactively," "benefits," and "pay," the ERS did not raise sovereign immunity argu-

ments at the agency hearing, in its agency decision, or on the appeal to the court. The court's July 6, 2000 findings of fact and order reversing the decision of the ERS Board and awarding relief to Katsumi, by Helen stated, *inter alia,* as follows:

> 2. The relief requested by Petitioner/Appellant in its Opening Brief . . . shall hereby be granted. The specific grant of relief by this Order is the authorization for Mrs. Helen S. Honda to revise Mr. Katsumi Honda, deceased's election of a mode of distribution of retirement allowance to one of the three statutorily authorized methods described in [HRS] § 88–283. Such revision of the election of a method of distribution shall be made within 60 days from the date of entry of this Order and *shall apply retroactively* to the date of Mr. Katsumi Honda's retirement, April 1, 1994. Benefits shall be calculated in the following manner:
>
> 1) *From April 1, 1994 to the date of Mr. Katsumi Honda's death,* the benefits payable shall be based upon Mr. Honda's entitlement as a Class C retirant;
>
> 2) *After the date of Mr. Honda's death,* [b]enefits shall be payed [sic] to Mrs. Honda as the beneficiary under the method of distribution selected until . . . Mrs. Honda's rights to such benefits shall terminate as provided under such election.
>
> The payment of such benefits shall be made forthwith.

(Some emphases in original and some added.) Even after the court ordered the ERS to allow Helen to select a new retirement option and to pay her benefits, the ERS did not raise the issue of sovereign immunity in its briefs before this court.

Now, in its motion for reconsideration, the ERS Board refers to "retrospective relief" and a "retrospective damages award[.]"

Previously, the ERS Board had obviously believed the doctrine of sovereign immunity did not apply. The failure to raise this issue in the history of this appeal renders the ERS Board's sovereign immunity arguments on a motion for reconsideration unconvincing. This court could not have "overlooked" or "misapplied" what was not raised.

The ERS Board additionally argues that "even if the contract and tort claims could be brought against the State—which under Chapter 91 they could not—the court has overlooked the two-year statutes of limitation[,]" HRS §§ 661–5[5] and 662–4.[6] Helen, however, filed an administrative appeal pursuant to HRS § 91–14. The ERS did not refer to any statute of limitations during the appeal. Again, the opinion could not have "overlooked" or "misapprehended" what was not raised.

### III.

■ Finally, the ERS Board asserts that "[a]bsent statutory authority, this court lacks jurisdiction to assign a new trust duty to ERS." Its subsidiary points are that (1) "[n]o statute in Chapter 88 provides that ERS owes a duty, let alone a fiduciary duty, to *individual* members to provide *individual* notice and counseling, particularly absent a request for information" (emphases in original), (2) "[o]ther state courts have held that because retirement systems are creatures of statute, a court has no authority to impose new requirements on them[,]" (3) "ERS's duty to responsibly manage state funds may extend a general duty to ERS members as a whole to ensure that the State will have sufficient money to meet its statutory obligations[,]" (4) "[e]ven under [the Employees Retirement and Income Security Act (ERISA) ], the majority of courts . . .

---

5. HRS § 661–5 (1993) provides:

> § 661–5 Limitations on action. Every claim against the State, cognizable under this chapter, shall be forever barred unless the *action* is commenced within two years after the claim first accrues; provided that the claims of persons under legal disability shall not be barred if the action is commenced within one year after the disability has ceased.

(Emphasis added.)

6. HRS § 662–4 (1993) states:

> § 662–4 Statute of limitations. A tort claim against the State shall be forever barred unless *action* is begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657–7.3 shall apply.

(Emphasis added.)

have not imposed upon an ERISA plan fiduciary the duty individually to notify participants and/or beneficiaries of the specific impact of the general terms of the plan upon them" (internal quotation marks and citation omitted), (5) "[a]bsent a request from the member, it is also impossible for ERS to anticipate each of the approximately 99,000 members' needs before they retire[,]" and (6) the legislature "grants the [ERS] Board discretion regarding how to administer state ERS funds, but it vests the authority regarding what benefits will be paid out, to whom, and when, with itself."

Before addressing these subsidiary points, it must be observed that the opinion cites to an opinion of the Attorney General's office itself that had previously determined that "the *trustees* of the [ERS] are, in both *common* and legal contemplation, trustees ... entrusted with the duty and responsibility of administering the System for the benefit of the members of the System." 118 P.3d at 1164 (citing Op. Att'y Gen. No. 64–25, at 8 (1964)) (emphases added). Trust duties, then, are hardly "new" to the ERS Board.

### A.

In point (1), the ERS Board maintains that "no statute requires or implies that ERS must send out information to members or counsel them on their retirement options." But to the contrary, HRS § 88–22 (1993), the statute establishing the ERS, provides that the retirement system "shall have the powers and privileges of a *corporation.*" (Emphasis added.) It is axiomatic that a corporation's directors and officers assume fiduciary duties. *See Chambrella v. Rutledge,* 69 Haw. 271, 274, 740 P.2d 1008, 1010 (1987) (finding that plaintiffs-union members should not be precluded from equitable relief in an action against defendant nonprofit corporation for breach of fiduciary duties); *Hawaiian Int'l Fin. v. Pablo,* 53 Haw. 149, 153, 488 P.2d 1172, 1175 (1971) ("It is a well established rule both in Hawaii and in a majority of the [s]tates that the relation of directors to the corporations they represent is a fiduciary one."); *Lum v. Kwong,* 39 Haw. 532, 538 (1952) ("The relation of directors to corpora-

tions is a fiduciary one and the well-established rule both in Hawaii and in a majority of the [s]tates is that when fiduciaries deal with themselves relative to their trust property the burden is upon such fiduciaries to establish the fairness of the transaction."); *Bolte v. Bellina,* 15 Haw. 151, 153–54 (1903) ("Directors stand towards the corporation which they represent and act for in the relation of trustees to a cestui que trust.... They must act in good faith and for the interests of the stockholders whom they represent."); *Lussier v. Mau–Van Dev., Inc.,* 4 Haw.App. 359, 381, 667 P.2d 804, 819 (1983) ("A corporate director or officer occupies a fiduciary capacity." (Internal quotation marks, brackets, and citations omitted.)). *See also* HRS §§ 414–221, –233 (1993) (delineating standards of conduct for corporate directors and officers).

Additionally, HRS § 88–23, which creates the ERS Board, vests the "general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this part and part VII[ [7] of this chapter ... in a board of *trustees* [.]" (Emphasis added.) Trustees, by definition, are imbued with fiduciary duties. *See Black's Law Dictionary* 1514 (6th ed.1990) (defining "trustee" as "[o]ne who holds legal title to property 'in trust' for the benefit of another person (beneficiary) and who must carry out specific duties with regard to the property. The trustee owes a fiduciary duty to the beneficiary." (Citing *Reinecke v. Smith,* 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109 (1933)); *see also Miller v. First Hawaiian Bank,* 61 Haw. 346, 350, 604 P.2d 39, 42 (1979) ("[T]he trustee[ ] is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest." (Quoting *Restatement (Second) of Trusts* § 173, Cmt. d (1959). (Block format omitted.)).

The ERS Board contends that the "only trust duties expressly imposed by Chapter 88

---

**7.** Part VII governs retirement for class C public officers and employees. HRS chapter 88 pt. VII.

are those of a prudent financial manager[,]" noting that the "two statutes that expressly reference 'trust' duties are HRS §§ 88–110 and 88–127 (1993)." The ERS Board directs this court's attention to the language in HRS § 88–110 that "[t]he board of trustees shall be trustees of the several funds of the system and may invest and reinvest such funds as authorized by this part and by law from time to time provided." It also emphasizes the language in HRS § 88–127 as follows:

> [A]ny and all sums contributed or paid from whatever source to the system *for the funds* created by this part, and *all funds* of the system including any and all interest and earnings of the same, *are and shall be held in trust by the board for the exclusive use and benefit of the system* and for the members of the system and shall not be subject to appropriation for any other purpose whatsoever.

(Emphases in original.) The ERS Board, however, ignores the phrase following the language it emphasizes, which states, "and for the members of the system." Thus, it would appear that the ERS Board owes a "trust" duty to not just the "system" as a whole, as the ERS Board contends in point (3), but to the *"members* of the system" as well.[8]

In a footnote, the ERS Board dismisses HRS § 88–27 (1993), which pertains to the "[o]ath of trustees[,]" as not "expressly refer[ring] to 'trust' duties." HRS § 88–27 provides, in pertinent part, as follows:

> Each trustee shall, within ten days after the trustee's appointment or election, take an oath of office that, so far as it devolves upon the trustee, the trustee will *diligently and honestly administer the affairs of the board of trustees,* and that the trustee will not knowingly violate or willingly permit to be violated any of the provisions of law applicable to the system.

(Emphasis added.) Reading HRS §§ 88–27 and 88–127 *in pari materia, see* HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other."), the ERS Board is charged with the duty to *"diligently* and honestly administer," HRS § 88–27 (emphasis added), "all funds . . . held in trust . . . for the exclusive use and benefit of the system *and for the members of the system,"* HRS § 88–127 (emphasis added). Diligence denotes "[v]igilant activity; attentiveness[.]" *Black's Law Dictionary* at 457. Hence, vigilance and attentiveness in administering the funds for the benefit of ERS members would encompass the duty to provide such members with understandable information of the retirement options. The ERS Board's conten-

---

**8.** The ERS Board states that its "primary duty is to properly invest and manage" the "$9 billion" in "state funds." The existence of "prudent financial manager" duties, however, would not preclude the existence of other fiduciary duties. Indeed, the Attorney General has previously advised the ERS Board that it is subject to "common-law restrictions" in addition to statutory qualifications. *See* Op. Att'y Gen. No. 64–25, at 2. *See also Amantiad v. Odum,* 90 Hawai'i 152, 166–67, 977 P.2d 160, 174–75 (1999) (concluding that "HRS § 386–151 (1993) . . . bestows upon the Director of Labor the fiduciary obligation of administering and maintaining the special compensation fund" even though the statute does not expressly refer to fiduciary duties).

The ERS Board cites to *Nutt v. New York State Employees' Retirement System,* 72 A.D.2d 898, 422 N.Y.S.2d 483 (N.Y.App.Div.1979), to support its argument that its "primary duty is to properly invest and manage [public pension] funds." In *Nutt,* the retiree argued that the comptroller, "as trustee of the retirement fund, ha[d] an affirmative duty to make the members aware of the benefits and insure that they receive the best

possible entitlement." *Id.* at 900, 422 N.Y.S.2d 483. The New York appellate court responded that "[a]ny such duty . . . is tempered by the bounds of reasonableness and the primary duty of preservation of the fund." *Id.* It held that "[t]o require the [retirement s]ystem to inform every applicant of the effect of their retirement date as indicated on their application in the absence of any request therefor before accepting said application would impose an unreasonable burden on the [s]ystem." *Id.*

The facts in Katsumi's case differ from the facts in *Nutt.* The opinion requires the ERS to "provide retirees *sufficient information* to make an *informed decision* in electing a retirement option." 118 P.3d at 1164 (quoting *Ricks v. Missouri Local Gov't Employees' Ret. Sys.,* 981 S.W.2d 585, 592 (Mo.Ct.App.1998)) (emphases added). Given that "[t]he choice of retirement options is a pivotal decision that may substantially affect the retiree's quality of living for the remainder of his or her life and the provision for loved ones upon the retiree's death[,]" *id.* at 1164, this duty would not "impose an unreasonable burden," *Nutt,* 72 A.D.2d at 900, 422 N.Y.S.2d 483, on the ERS.

tion that "[n]o statute in Chapter 88 provides that ERS owes a duty," thus, is incorrect and this court did not "misapprehend" or "overlook" the duties accorded the ERS Board through its enabling statutes in chapter 88.

### B.

Next, the ERS Board cites to case law from other jurisdictions to support its point (2) that "because retirement systems are creatures of statute, a court has no authority to impose new requirements on them." However, the fact that the ERS Board was created by statute does not insulate it from common law duties. The same Attorney General opinion cited in the opinion, discussed *supra*, determined that the ERS Board may be subject to common law trust duties, including the duty of loyalty. Op. Att'y Gen. No. 64–25, at 2. The Attorney General advised that the statutes governing the ERS Board

> are mainly declaratory of the common law, and where the statute prescribes certain qualifications of disinterestedness, it is not necessarily inconsistent with, and may be held *not to exclude the broader qualifications of, the common-law rule.* Accordingly it is necessary to consider whether there are any applicable common-law restrictions.

*Id.* (emphasis added). *Cf. Maxa v. John Alden Life Ins. Co.,* 972 F.2d 980, 985 (8th Cir.1992) ("[A]s fiduciaries, the duties of plan administrators [under ERISA] go beyond those specified in the statute, and include duties derived from common law trust principles."). Therefore, the ERS Board's contention that "because retirement systems are creatures of statute, a court has no authority to impose new requirements on them" and that "whether the ... ERS has a fiduciary duty to individual members to ensure that they make 'informed decisions' is a non-justi-

ciable question" are unavailing.[9] This court did not "impose" a "new" duty.

The ERS Board cites to *Lee v. Board of Administration of the Public Employees' Retirement System,* 130 Cal.App.3d 122, 181 Cal.Rptr. 754, 760 (1982), for the proposition that "courts must take a statute as they find it" and that if "its operation results in inequity or hardship in some cases, the remedy therefor[ ] lies with the legislative body." Although the court in *Lee* denied the plaintiff retirement benefits under the applicable statute, *id.,* the court entertained the plaintiff's alternative argument that the retirement system was "nonetheless *estopped* from denying her claim" due to "misleading" retirement literature, *id.* at 761 (emphasis added). *Lee,* then, did not altogether preclude judicial relief.

Moreover, *Lee* implicitly held that retirement information provided to the employee must be "clear." *Id.* at 762. The *Lee* court determined there was no estoppel because the "retirement pamphlets distributed by [the retirement system *made] clear* that the information provided therein [was] general and simplified and [did] not purport to be the definitive statement of the retirement law." *Id.* (emphasis added). In contrast here, the ERS's retirement application form and pamphlet "did not contain unambiguous and understandable terms" but, rather, "contained insufficient and seemingly inconsistent information." 118 P.3d at 1165.

The ERS Board also relies on *Kinzy v. Oklahoma,* 20 P.3d 818, 822 (Okla.2001), for the rule that a public retirement system "whose authority is deraigned solely from statute ... [,] is without power to act in a manner contrary to what the law prescribes[,]" which would be a "vain and useless act." The Oklahoma Supreme Court had to determine the time when the plaintiffs-firefighters' claim to recover pension benefits accrued so as to initiate the running

---

9. Accordingly, the ERS Board's reliance on *City of New York v. Schoeck,* 294 N.Y. 559, 63 N.E.2d 104 (Ct.App.1945), for the proposition that "[i]n equity, a court has no power to direct how a statutory trustee performs its duties," is misplaced. Although the *Schoeck* court held that "such equitable principles have no application in a case ... where the pension fund is created by statute and the powers and duties of the board of trustees of the fund are defined and regulated by statute[,]" *id.* at 108, it determined that a court could direct the board of trustees to perform its duties under the statute, *id.* at 109. Ultimately, the *Schoeck* court ordered the board to pay the employee from the pension fund. *Id.*

of the applicable limitations period. *Id.* at 820. The trial court had "ruled that because of the existence of a trust-based relationship" between the plaintiffs-firefighters and the retirement system, the firefighters' pension board had to "first unequivocably repudiate the trust ... to initiate the applicable [statute of] limitations period." *Id.* at 822.

The Oklahoma Supreme Court reversed, holding that the plaintiffs-firefighters' claim was time-barred because the Oklahoma statutes "reveal[ed] no instance where the [b]oard [was] empowered to or given authority to abrogate its statutorily-prescribed fiduciary relationship with the pension funds." *Id.* According to the Oklahoma Supreme Court, "were [the b]oard to do so, it would be acting outside its statutory mandate[.]" *Id.* Here, the opinion does not direct the ERS Board to act "outside its statutory mandate[,]" *id.*, but to conduct further proceedings "in view of the ERS's fiduciary duty to retirees[,]" 118 P.3d at 1166, which, as stated *supra* and in the opinion, 118 P.3d at 1164, is in consonance with chapter 88. *See e.g.,* HRS § 88–23.

The ERS Board further notes that "[i]n Washington, the state retirement system is not even considered a trust, but a state fund that is solely a creature of statute[,]" citing *Retired Public Employees Council of Washington v. Charles,* 148 Wash.2d 602, 62 P.3d 470 (2003). In *Charles,* organizations representing retired public employees and teachers petitioned for a writ of mandamus against the director of the Washington Department of Retirement Systems. *Id.* at 474–75. The Washington Supreme Court held that the director "may not be characterized as a trustee of [the] funds" because the "funds [were] not trusts[.]" *Id.* at 481. That is not the case here. As discussed *supra,* the ERS Board, by express statutory mandate, is a "board of trustees," HRS § 88–23, and, therefore, the fact that another state does

not regard its retirement system director as a trustee is inconsequential.

Finally, the ERS Board relies on *Employees' Retirement System Board of Control v. Givhan,* 907 So.2d 1043 (Ala.Civ.App. 2004) (per curiam). The Board's reliance is misplaced. In *Givhan,* there was no allegation that the retirement forms used by the Employee Retirement System Board of Control of Alabama were confusing or misleading. It was simply argued that the retiree lacked capacity to make a proper election due to illness. Also, *Givhan* does not make mention of any fiduciary obligations of Board members or plan administrators. Again, the fact that another state does not choose to impose a fiduciary obligation is unpersuasive.

## C.

■ In point (4), the ERS Board maintains that the legislature could enact legislation similar to the provision in ERISA that provides a cause of action for "breach of fiduciary duty," 29 U.S.C. § 1109,[10] and that

> [e]ven under ERISA, "the majority of courts ... have not imposed upon an ERISA plan fiduciary the duty individually to notify participants and/or beneficiaries of the specific impact of the general terms of the plan upon them." *Maxa v. John Alden Life Ins. Co.,* 972 F.2d 980 (8th Cir.1992). *See also Stahl v. Tony's Building Materials, Inc.,* 875 F.2d 1404 (9th Cir.1989).

In *Maxa,* under the circumstances in that case, the Eighth Circuit did

> not construe ERISA or the regulations under it to require that the appellee had a duty individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced according to the plan's coordination of benefits provision unless they enrolled in Medicare.

---

10. 29 U.S.C. § 1109(a) provides, in relevant part, that

[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan

resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

972 F.2d at 986. It was held that the appellee did not have the duty to provide individualized notice, the rationale being that

> fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the *individualized* concerns of thousands of employees, especially without notice of those concerns.

*Id.* (emphasis in original). The instant case, however, does not concern individualized notification. The duty confirmed in the opinion is the duty to provide clear and understandable information on a standard application form and pamphlet that was distributed to *all* retirees, not just Katsumi. Hence, *Maxa* is not on point.

It should be noted that ERISA is a federal statutory scheme involving statutes and regulations, the complexities of which, even the ERS Board acknowledges, "can be confusing." For instance, ERISA requires that a "summary plan description of any employee benefit plan ... be furnished to participants and beneficiaries." 29 U.S.C. § 1022. These summary plans must comport with numerous standards under ERISA and its accompanying regulations. *See Stahl,* 875 F.2d at 1406. Plans offered through the ERS, however, are exempt from ERISA as "governmental plans." *See* 29 U.S.C. § 1003(b)(1) ("The provisions of this subchapter shall *not apply* to any employee benefit plan if ... such plan *is a governmental plan* [.]" (Emphasis added.)); [11] 29 U.S.C. § 1321(b)(2) (excluding from ERISA coverage, plans that are "established and maintained for its employees by the Government of the United States, *by the government of any State* or political subdivi-

sion thereof, or by any agency or instrumentality of any of the foregoing" (emphasis added)); *see also Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 447 (5th Cir.1995) ("[ERISA] was enacted to encourage the establishment and growth of *private* pension plans and to protect the participants in those plans." (Emphasis added.)).

Nonetheless, the recognition of a duty to provide clear information to ERS members is consistent with the mandates of ERISA. In *Stahl,* the Ninth Circuit observed that a "summary plan description 'must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries.' " [12] 875 F.2d at 1406 (quoting 29 Code of Federal Regulations § 2520.102–2(b) (1987)) (brackets omitted). Similarly, in *Swanson v. U.A. Local 13 Pension Plan,* 779 F.Supp. 690, 700 (W.D.N.Y.1991), the court held that "ERISA ... impose[s] a duty upon fiduciaries to act in the interest of plan participants" and that "[t]hat duty includes correctly and adequately informing participants about their rights and obligations under the plan." Assuming, *arguendo,* that ERISA cases provide an appropriate analogy for Katsumi's case, the objectively "misleading" nature of the ERS's retirement application and pamphlet would not constitute "correct and adequate" information on Katsumi's "rights and obligations." Therefore, the opinion is not in conflict with the parallel rationale in ERISA and this court did not "overlook" or "misapprehend" this matter.

### D.

In point (5), the ERS Board contends that without a request from a member, it is impossible for the ERS to meet the needs of its

---

11. A "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

12. *Stahl* does not support the ERS Board's position that no duty was owed in Katsumi's case. The summary plan at issue there was held to contain "perfectly understandable terms." 875 F.2d at 1408. Moreover, one of the court's stated bases for denying the plaintiff-retiree's claim that more explanation was needed in the sum-

mary plan was that a "summary plan description does no good unless an employee can read and digest it." *Id.* at 1409. The plan already exceeded fifty pages. *Id.* Thus, requiring further explanation would have contravened the federal regulations, which require that summary plans be "concise so that employees will read them." *Id.* A similar page burden was not implicated in Katsumi's case. The focus of the opinion was the objectively confusing and misleading language and format in the application and pamphlet provided to Katsumi.

approximately 99,000 members and that "without notice of [Katsumi's] need for more information, or of his particular circumstances, ERS could not have known that the unambiguous choice he marked on his retirement option form was misleading to him, when it had been satisfactorily chosen by countless others." The ERS Board's contention that the ERS could not have known that Katsumi did not understand the effect of his election is unpersuasive inasmuch as the application form and pamphlet it distributed to him and to *all* ERS members were apparently misleading. Additionally, the statement that "countless others" had chosen the "normal" option to their satisfaction, assuming its relevance, is not substantiated with a citation to the record and, therefore, amounts to conjecture.[13]

## E.

In its final subsidiary argument, point (6), the ERS Board argues that "the legislature has decided to make Hawaii's a legislatively circumscribed benefits plan . . . [, meaning that the legislature] grants the Board the discretion regarding how to administer state ERS funds, but it vests the authority regarding what benefits will be paid out, to whom, and when, with itself." Assuming, *arguendo*, that the ERS meets the definition of a "defined benefit plan" [14] as the ERS Board contends, the opinion does not determine "what benefits will be paid out." It addresses the *manner* in which the ERS fulfills its obligation to "administer" the ERS funds.

The duty of providing clear and accurate information in the retirement application and pamphlet does not alter "what benefits will be paid out" under the statutes, but goes to the ERS's *administration* of such benefits. The ERS Board, in its motion, acknowledges that "the ERS's primary duty to non-contributory members is to ensure that the state

funds dedicated for their retirements are *properly managed and distributed.*" (Emphasis added.) The dissemination of misleading retirement literature frustrates the ERS member's statutorily prescribed right to "elect" a retirement allowance option, HRS § 88–283 (1993), and implicates the ERS's management and distribution of the funds.

The ERS Board argues that Katsumi "was not short-changed" by pointing out that "he was a non-contributory Class C member . . . [who] did not contribute his own monies toward his retirement, though he did contribute his service to the State." It would seem self-evident that the distinction between contributory and non-contributory members is irrelevant to the question of whether the ERS fulfilled its obligation to properly manage and administer the state funds inasmuch as the ERS's duty applies to all members.

Therefore, upon consideration of the subsidiary points, the opinion did not "overlook" or "misapprehend" law or fact in confirming the ERS's "duty to provide its members . . . with clear, understandable information concerning retirement benefits." 118 P.3d at 1157.

## IV.

■ Alternatively, the ERS Board requests that the opinion be vacated and that the parties be given the opportunity to "fully brief: (1) the issues raised in this court's opinion; and (2) the issue of whether [Helen's] death has rendered some or all of the issues on appeal moot." As to point (1), the opinion already notes that "Helen did not raise" the erroneous findings of fact before the court. 118 P.3d at 1157. This matter, then, as the ERS Board concedes, has "al-

---

13. Finding no. 18 states as follows:

Upon review of the ERS forms and documents completed and submitted by Katsumi Honda, it does not appear that he had trouble understanding the forms or following instructions. There is no credible evidence in the record that Katsumi Honda did not understand.

14. In its motion the ERS Board states that a

defined benefit plan entitles the members to a predetermined distribution upon retirement and to an actuarially sound plan to ensure that the plan is adequately funded to meet those distribution requirements. It does not entitle them to any use of the contributions other than to ensure the above entitlements are met.

(Quoting *Koster v. City of Davenport, Iowa,* 183 F.3d 762, 767 (8th Cir.1999).)

ready been fully considered by this court"[15] and need not be reconsidered. Moreover, the opinion expressly provides the statutory authority for remanding the case to the court, and in turn, to the ERS. It states that the majority is "exercis[ing] ... [this court's] general superintendence of the trial courts ... and [its] power to make such orders and mandates as necessary for the promotion of justice[.]" 118 P.3d at 1157. Based upon the foregoing discussion of the ERS Board's arguments, further briefing on these matters is unnecessary. The mootness issue has been addressed, as stated *supra.*

## V.

Accordingly, the ERS Board's motion for reconsideration is denied.

Dissenting Opinion by LEVINSON, J., in which MOON, C.J., Joins.

I dissent.

On July 7, 2005, the appellee-appellant Board of Trustees of the Employees' Retirement System (ERS) of the State of Hawai'i [hereinafter, "the ERS Board"] filed a motion for reconsideration of this court's June 17, 2005 published opinion in *Honda v. Bd. of Trs. of the Employees' Ret. Sys.,* 118 P.3d 1155 (Haw. 2005), which vacated the July 28, 2000 final judgment of the circuit court of the first circuit, the Honorable Allene R. Suemori presiding, and "remand[ed] to the [circuit] court with instructions to remand the case to the ERS [Board] for further proceedings to consider the matters enumerated [in the majority opinion] in the framework of the entire record and in view of the ERS's fiduciary duty to retirees." *Id.,* at 1166. In its memorandum in support of the motion, the ERS Board asserts, *inter alia,* as follows: (1) that this court "has decided non-justiciable questions" because (a) the "ERS does not have the jurisdiction to decide remedies under [Hawai'i Revised Statutes (HRS)] Chapters 661 or 662" and (b) this court "cannot waive the [ERS's] sovereign immunity"; (2) that "the legislature must decide [the] ERS's fiduciary duties to its members"; and (3) that

"[n]o statute authorizes ... [anyone] to change an ERS member's retirement option[,]" such that, "[o]n remand, [the] ERS is ... left in the position of either exceeding its statutory authority or violating this court's order."

The ERS Board's motion for reconsideration exposes the veritable Pandora's Box that the majority opinion has opened in the present matter, including pressing jurisdictional issues—*i.e.,* justiciability pursuant to HRS Chapter 91 and the ERS's sovereign immunity—and has also identified a fundamental point of law that the majority opinion has either overlooked or misapprehended, Hawai'i Rules of Appellate Procedure (HRAP) Rule 40(b) (2005), to wit, that HRS § 88–283(b) (1993)—which is undisputedly the controlling statute as to the present matter—provides that "[a]ny election of a mode of retirement shall be irrevocable." Thus, even if the ERS Board were to find on remand that, "in the framework of the entire record and in view of [its] fiduciary duty to retirees," *Honda,* at 1166, it had provided insufficient information to the appellant-appellee Katsumi Honda [hereinafter, "Katsumi"], the ERS Board is nonetheless bound to apply HRS § 88–283(b), which mandates that Katsumi's election of the "normal" retirement option is *irrevocable.* The dissenting opinion noted that the foregoing statutory provision prescribes the appropriate disposition of the present matter. *See Honda,* dissenting at 1167 (stating "that the circuit court erred in ordering that [the appellant-appellee Helen S. Honda], a non-ERS member, could retroactively revise an irrevocable method of distribution").

That being the case, I would grant the ERS Board's motion for reconsideration and adopt the analysis and disposition set forth in the dissenting opinion. *See id.,* dissenting at 1188.

---

**15.** In the motion, the ERS Board states that it "does not raise the matters addressed in the court's dissenting opinion because [the ERS Board], while it fully agrees with the dissent, assumes that those matters have already been fully considered by this court."